**BULLOCK v. STERLING DRUG, Inc.**
**Civ. No. 8240.**

United States District Court
E. D. Pennsylvania.
Oct. 16, 1950.

See also 8 F.R.D. 575.

372

John B. Martin, Philadelphia, Pa., for plaintiff.

C. Russell Phillips, Philadelphia, Pa., for defendant.

CLARY, District Judge.

In this action David Bullock has claimed of Sterling Drug, Inc. severance pay allegedly due him as an employee of the defendant. It was tried to the Court without a jury. I shall relate the facts as I have found them in narrative form.

### Facts.

Plaintiff, David Bullock, became an employee of Dr. D. Jayne and Son in the year 1919. Whether Dr. D. Jayne and Son was a partnership or a proprietorship trading under a fictitious name does not appear. In 1931 and in order to carry on the business during the settlement of the Jayne estate, the business was incorporated under the name of Dr. D. Jayne and Son, Inc. . This corporation continued in existence and operated the business up to at least the 13th of January, 1947. It was dissolved by proper legal action in April of 1947.

During the Fall of 1946, defendant Sterling negotiated for the purchase of all of the outstanding stock of the Jayne corporation. Plaintiff herein was head bookkeeper and auditor as well as a Director, Vice-President and Treasurer of the Jayne corporation. During the Fall of 1946, Mr. Hill, President of Sterling, together with the company attorney and Mr. Mulhearn, the Treasurer of the company, visited the Jayne offices in Philadelphia to discuss the stock purchase, particularly with Mr. McIntyre, the President of Jayne, and the majority stockholder. Plaintiff herein, David Bullock, and his wife owned approximately 10% of the outstanding capital stock. As part of the negotiations, plaintiff herein made direct inquiry as to what his status as a Jayne employee would be in the event Sterling acquired 100% stock ownership of Jayne. He was informed that no immediate changes were contemplated but that when any changes were made, all Jayne employees would become Sterling employees and entitled to the same seniority rights as if they had worked for Sterling the length of time they had worked for Jayne. At least one employee of Sterling was then installed in the Philadelphia office of the Jayne corporation to check the financial records and data which was under the supervision of the plaintiff herein, as head bookkeeper and auditor. The review of the records having been completed to the satisfaction of Sterling, the sale was successfully consummated. On the 13th of January of 1947 a meeting was held of the Officers and Directors of the Jayne corporation at which all tendered their resignations as part of the change of ownership and management. Thereafter, on the 17th day of January,

certificates of Sterling corporation were issued to the stockholders of the Jayne corporation in exchange for their Jayne stock through the Philadelphia National Bank. Plaintiff herein and his wife exchanged their 10% holdings for Sterling stock having a value of $49,500. Thereafter and until February 17, 1947, plaintiff herein continued his duties as head bookkeeper and auditor. Mr. McIntyre was retained by Sterling as general manager of the Jayne operation. On the 17th day of February, 1947, plaintiff was taken ill with a heart condition and his condition was so serious that for several months thereafter he was confined to his bed. He was paid his regular salary, $600 per month, by checks of the Jayne corporation through March. Thereafter and through the month of September, 1947, he was paid his regular salary by checks of Sterling Drug, Inc., Jayne branch. It is well to note at this point that deductions were made in each instance for Income Withholding tax, Social Security and Old Age Benefits and the Philadelphia Wage Tax. On or about April 1, 1947, as before mentioned by appropriate legal action the Jayne corporation was formally dissolved and its legal existence terminated.

Early in May of 1947, Mr. McIntyre, then general manager of the Jayne branch of Sterling corporation, called upon the plaintiff at a time when he was still confined to bed. Plaintiff herein raised the question as to his status as an employee and he was informed by Mr. McIntyre that Sterling would pay him as long as it cared to and if it didn't have a job for him and he wasn't able to go to work, he would be paid off and given severance pay according to a schedule prepared by Sterling for employees leaving its service without fault on the part of the employee. Such a schedule was in existence for all Sterling employees and the then current schedule was one which had been set up on June 20, 1946, a copy of which had been transmitted to the Jayne corporation early in 1947, but whether before or after the actual stock transfer does not clearly appear from the record. This statement of McIntyre had the effect of reassuring the plaintiff to the extent that he did not attempt to get up and return to work against the advice of his doctor who wanted him to rest and effect a complete recovery. He did not return to work before September 30, 1947. The testimony indicates that his illness was extremely serious and that he could not have resumed his employment even up to the date of trial.

The Jayne branch of Sterling Drug was continued in existence until September 30th of 1947 when, by order of the company, it was closed down and all then employees of Jayne were discharged. At that time plaintiff was informed that his services were no longer required. All employees with the exception of the plaintiff were given severance pay in accordance with the aforementioned severance pay schedule. Plaintiff made demand for severance pay which was refused and this suit was instituted to recover it. The pertinent provisions of the severance pay schedule are as follows:

"Less than one year's employment............................ Two weeks salary
One to five years employment .............................. One month's salary
Five to ten years employment ............................. Two months salary
Ten to fifteen years employment............................. Three months salary
Fifteen to twenty years employment......................... Four months salary
Twenty to twenty-five years employment ..................... Five months salary
Over twenty-five years employment ......................... Six months salary"

In the letter which embodied the severance pay schedule, the defendant stated that it (the severance pay schedule) "does apply in cases, for example, where an office or a plant is being closed, or where a consolidation of departments had eliminated the job, or where the employee is no longer able, through no fault of his own, to render satisfactory service." This schedule embraced the seniority rights referred to in the conversation with the President of the Company held in the Fall of 1946.

That it was the policy of Sterling Drug, Inc., the defendant, to accord to employees

of an acquired company joining the parent organization, the same rights as employees of the parent company is evidenced in a statement contained in the Annual Report of Sterling Drug, Inc. for 1947 which reads as follows: "The year 1947 also saw the retirement of Miss S. E. Park who for the past 14 years had been corporate secretary. Although the business has yet to observe its Golden Anniversary, a number of its employees have service records of more than 50 years because, upon joining the parent organization, they were credited with their prior years of service with acquired companies. * * *".

The plaintiff has also made a claim for one month's salary as an employee of Ladox Laboratories, Inc., a partially owned subsidiary. The plaintiff has not sustained his burden of proving that the employees of Ladox ever joined the parent organization.

### Discussion.

A decision of this case requires a determination of the following questions:

1. Was David Bullock an employee of the Sterling Drug Company at the time of his separation from its payrolls on September 30, 1947?

2. If an employee, is he entitled to the benefits of the severance pay schedule of Sterling Drug, Inc., and, if so, in what amount?

The defendant contends that David Bullock never became its employee. It argues that he became incapacitated during the time that the Jayne corporation was still in existence and functioning and never thereafter did any work at all for the Sterling corporation. It suggests further in accordance with the applicable principles of Workmen's Compensation cases that as an officer of a corporation, he was not included in the term "employee" as used in the schedule.

The facts as above outlined show very clearly that the Jayne corporation was an "acquired" company and for practical and effective control was brought into the parent organization on the 17th day of January, 1947, and for every purpose on the 1st day of April, 1947, when the Jayne corporation was dissolved. The record indicates and I have no hesitation in clearly finding that David Bullock was an "employee" within the meaning of the word as employed by the severance pay schedule after January 17, 1947. After the Jayne corporation was brought into the Sterling corporation, he performed the same tasks and did the identical work which he had done from 1919 to 1947 even before he became an officer of the Jayne corporation. The distinctions drawn in the Workmen's Compensation cases between a corporate manager and an employee are not applicable. The type of work performed by this plaintiff was over and beyond the work ordinarily performed by corporate officers and certainly to that extent, he was an employee of the company.

As to the first proposition that he never did any work for the Sterling Drug after dissolution of the Jayne corporation, the record clearly indicates that David Bullock was carried as an employee of the Sterling corporation and was so treated by the corporation on its books, records and in its handling of his payroll account. There was nothing in the manner in which his account was handled to indicate that the company considered that he was other than an employee or that they were paying him a gratuity, as contended for by the defendant. I have no hesitancy, therefore, in concluding that up until the time when he was informed that his services were no longer required on September 30, 1947, he was an employee of Sterling Drug, Inc., the defendant in this case.

The answer to the second question requires more extended discussion. Defendant argues that assuming that the plaintiff was an employee and that the severance pay schedule was effective for all regularly working employees, because of inability of the plaintiff to perform any duties up to the time of his separation, there was a total failure of consideration. With this contention is coupled the claim and explanation that any payments made to him after April 1, 1947 were in the nature of gratuities and not salary. At this point, it is well to note that at no time in the progress of this case or in briefs submitted there

after does defendant contend that any payments made during the illness of the plaintiff were in the nature of severance pay.

 Since this is a unilateral contract and the requirement ordinarily stated for the sufficiency of consideration to support a promise is, in substance, a detriment incurred by the promisee or a benefit received by the promisor at the request of the promisor, (see Williston on Contracts, Volume I, Sections 13 and 102) we must view this case in light of these standards. Defendant, as set forth before, argues that any payment made was gratuitous rather than consistent with the theory of an employee and employer relationship. Defendant has offered no testimony in this case and we must, therefore, take the record and judge it from what we have found to be the credible evidence adduced by the plaintiff. Rather than these payments being gratuities as argued by the defendant, it is much more likely that defendant's interests were best served by keeping the old employees of the Jayne corporation on the payroll and not disturbing the existing employer-employee relationship during the few months that it intended and actually did keep the Jayne branch in operation. It is also extremely likely that plaintiff's return to work, should he recover from his illness, would be of extreme value to the defendant because of his intimate knowledge of the financial and accounting position of the Jayne corporation. Viewed in either light, such paymens would not in any wise be gratuities but rather would be something done for the benefit of the defendant. There is no difficulty, therefore, in concluding that the standards of consideration required to support a unilateral contract have been met in the plaintiff's case in chief.

Defendant in its brief has cited a Pennsylvania case and the Restatement of Contracts in support of its contention that there was a failure of consideration in that Bullock never performed any services for Sterling and therefore could not enforce the provisions of the severance pay schedule. With this position I cannot agree for several reasons. First, because I am convinced that Sterling was in actual control and active management of the Jayne operation after the stock acquisition in January and that Bullock did perform services for Sterling. Second, because, as I have stated before, the evidence is more consistent with a finding that Sterling was bargaining for inaction on Bullock's part when he was ill than it is with a finding that Sterling was making gratuitous payments to Bullock. The cited situations are not apposite. In the case of Hetkowski v. Dickson City School District, 1940, 141 Pa.Super. 526, 15 A.2d 470, plaintiff by her own misconduct had rendered herself incapable of performing her services for part of the period of the employment contract. She brought suit for salary for the balance of the unexpired term of the contract. It was held that she was not entitled to recover because she was unable to perform her part of the contract and especially so since it was her own wrongdoing which rendered her incapable of performing.

In the Restatement illustration, Section 275, the situation dealt with was a contract of employment for a definite period of time and because of ill health the employee was unable to perform. The Restatement states that there is no duty on the part of the employer to retain him for the balance of the term. I agree with those results wholeheartedly but they have no application here. The plaintiff is not seeking to assert a right to continue his employment despite his incapacity, as was the case of the cited illustrations, rather he is seeking to assert a right arising out of the employment which he contends did continue, even if only at the sufferance of the defendant.

I conclude from all the facts that plaintiff was an employee of the defendant at the time of his separation, that under the express policy and offer of the company he was entitled to seniority from the time of his first employment with the business of Dr. D. Jayne and Son in 1919, that his term of employment for such calculation is 28 years, and that he is entitled to the maximum of 6 months pay at the rate of $600 per month.

 One other question must be determined and that is when interest on the

award should start. It appears to me that defendant was entitled to a reasonable time within which to make the payment and I find that a period of 31 days was a reasonable time within which to make the payment. Accordingly, interest shall be allowed from November 1, 1947.

### Conclusions of Law.

1. The severance pay schedule published by the defendant on June 20, 1946, and circulated among the employees of the Jayne company early in 1947 was an offer of a unilateral contract.

2. The plaintiff accepted said offer of a unilateral contract by remaining in the employ of the defendant.

3. The acceptance created a contract which entitled plaintiff to payments according to the terms of the severance pay schedule.

4. Plaintiff is entitled to 6 months pay by reason of his having been employed by the defendant and its acquired company for over twenty-five years.

5. No offer of severance pay was made to the employees of Ladox Laboratories, Inc.

6. The plaintiff is not entitled to any sums of money as severance pay as a result of his employment by the Ladox Laboratories, Inc.

7. Judgment is entered for the plaintiff in the amount of $3,600, with interest from November 1, 1947.