51 N.J. Super. 139 (1958)
143 A.2d 762
EDWARD E. ANTHONY, ET ALS., PLAINTIFFS-RESPONDENTS,
v.
JERSEY CENTRAL POWER & LIGHT COMPANY, A PUBLIC UTILITY CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1958.
Decided July 3, 1958.
*141 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry Lane, Jr., argued the cause for defendant-appellant (Messrs. Autenrieth and Rochester, attorneys).
Mr. Irving Leuchter argued the cause for plaintiffs-respondents (Messrs. Kapelsohn, Lerner, Leuchter and Reitman, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an action by 27 former employees of the defendant to recover severance pay contended to be due them attendant upon the sale of defendant's gas business to another company in June 1952 resulting in the termination of their employment with defendant. Twenty-five of them were granted summary judgment in the Superior Court, Law Division. As to two of the plaintiffs, Voorhees and Lonsdale, somewhat different factual questions were involved and their cases were held for trial after the court denied defendant's motion for summary judgment as to them. Defendant's present appeal is both from the grant of summary judgment in favor of the 25 and the denial of summary judgment for the defendant as to the two.
We confine our attention first to the common cause of the 25 plaintiffs who received judgment in the Law Division. These were all supervisory employees of the defendant, engaged exclusively in the gas phase of its business. Defendant was required by an order of the Securities Exchange Commission to divest itself of its gas properties and operations and it complied by a sale thereof to New Jersey Natural Gas Company by contract dated December 3, 1951 and effective June 2, 1952. Plaintiffs were notified by letter dated *142 May 29, 1952 that they were no longer employed by defendant. They all obtained employment with the purchasing company.
On July 1, 1949 defendant issued its "General Rules," containing a variety of conditions of employment, compensation and benefits, including the following:
"The Company's plan for severance compensation is set forth in its labor agreements covering classifications of certain employees. This plan likewise applies to employees not covered by those labor agreements. A copy thereof may be obtained from the Personnel Department."
This provision remained in effect to and including June 2, 1952. The rules were compiled and distributed by the defendant to all the employees, including plaintiffs. On June 2, 1952 there was in effect between defendant and a labor union a collective bargaining agreement which provided for severance pay benefits for union employees at the rate of one week's pay for each full year of continuous service with the company payable to those permanently released from employment after at least a full year of service for reasons beyond the control of the employees. It was settled in Adams v. Jersey Central Power & Light Co., 36 N.J. Super. 53 (L. Div. 1955), affirmed 21 N.J. 8 (1956), that the circumstances under which union employees of the defendant engaged solely in defendant's gas operations were transferred to the New Jersey Natural Gas Company as a consequence of the transaction referred to did not disentitle them to the severance pay benefits specified in the collective bargaining agreement. Defendant does not contend to the contrary as to the 25 plaintiffs presently involved. These persons were not members of the union and they claim solely under the General Rules. Defendant argues that it was not liable to these plaintiffs for the severance pay then specified, within settled principles of contract law; and, in the alternative, that disputed issues of fact precluded the grant of summary judgment in favor of the plaintiffs.

*143 I.
Defendant's first contention is that insofar as the plaintiffs are concerned the publication and distribution of the severance pay rule was a mere gratuitous promise of a bonus by the employer, not supported by consideration to the employer or detriment to the employees and therefore not enforceable. It is stressed that the employees undertook no new obligations nor were required to forego any rights or privileges in return for the company's promise and were free to quit at will.
The fallacy in the foregoing argument is the assumption therein that the company's offer was susceptible of acceptance only by the rendition of a promise or undertaking by the employee in exchange, i.e., that it contemplated the consummation of a bilateral contract. Its natural construction, however, is the submission of an offer in return for rendition of services in employment by the employee until the occurrence of the condition stipulated  a unilateral contract. This is the general present-day construction of employment stipulations for severance pay, bonuses or similar incentive plans. Chinn v. China National Aviation Corporation, 138 Cal. App.2d 98, 291 P.2d 91 (D. Ct. App. 1955); Hunter v. Sparling, 87 Cal. App.2d 711, 197 P.2d 807 (D. Ct. App. 1948); Bullock v. Sterling Drug, 93 F. Supp. 371 (D.C.E.D. Pa. 1950), affirmed 187 F.2d 145 (3 Cir. 1951); Roberts v. Mays Mills, 184 N.C. 406, 114 S.E. 530, 28 A.L.R. 338 (Sup. Ct. 1922); Hercules Powder Co. v. Brookfield, 189 Va. 531, 53 S.E.2d 804 (Sup. Ct. 1949); Cain v. Allen Electric etc. Company, 346 Mich. 568, 78 N.W.2d 296 (Sup. Ct. 1956); Schofield v. Zion's Co-op Mercantile Institution, 85 Utah 281, 39 P.2d 342, 96 A.L.R. 1083 (Sup. Ct. 1934). Thus, plaintiffs' remaining in the employ of the defendant until the occurrence of the stipulation for severance pay matured the contractual obligation of the employer incepted by the proposal effected by its distribution of the Rules to the employees. See 1 Corbin on Contracts (1950), § 65, pp. 203, 204, § 70, p. 221. Cf. Byerly v. *144 Duke Power Co., 217 F.2d 803 (4 Cir. 1954). Where all the services have already been rendered by the employee and he is at retirement age a promise to pay him benefits is unenforceable as no longer being susceptible of acceptance by the rendition of further services until the stipulated event. See Dolan v. Heller Bros. Co., 30 N.J. Super. 440 (Ch. Div. 1954).
Most of the cases cited by defendant are distinguishable on the ground that the employees were not entitled to the benefits, under the terms of the plan as construed by the court. To the extent that they follow the philosophy that such benefits are in any case unenforceable gratuities they do not represent the enlightened and generally prevailing viewpoint of the cases cited above.
It is unreal to contend that the employer received no benefit from the employees in return for the promise sued on. Many courts have recognized that, like other of the so-called "fringe benefits," the availability of severance pay tends to better employee morale, improve performance and lessen turnover, all to the distinct advantage of the employer. Chinn v. China National Aviation Corporation, supra (291 P.2d at page 92); Cain v. Allen Electric etc. Company, supra (78 N.W.2d at page 299). Our Supreme Court has said that severance pay "[i]n a real sense * * * is remuneration for the service rendered during the period covered by the agreement," Owens v. Press Publishing Co., 20 N.J. 537, 546 (1956); and see Adams v. Jersey Central Power & Light Co., supra (21 N.J. at page 15). Nor is it accurate to regard the benefit thus derived by the employer as not having been contributed by the employees. The employer was not gearing its plan to tangible, measurable bettered performance by employees as individuals but to the amelioration of the conditions mentioned for the employer's benefit on a mass or plant basis. It is to be presumed that the employer's objectives were realized and that the services of all the employees, collectively, contributed thereto. There was, therefore, both benefit to the employer and detriment *145 to the employees. But either alone would have been sufficient if intended by the promisor as the price of his agreement. Joseph Lande & Son, Inc., v. Wellsco Realty, Inc., 131 N.J.L. 191, 198 (E. & A. 1943).
To be distinguished is the situation where the employee has already contracted to give the service before receiving the promise. Here it has been argued that the promise of a bonus or other additional stipend is a gratuity as the promisee is already bound to render the performance. 1 Williston on Contracts (rev. ed. 1936), § 130B, p. 452 (p. 543, in the 3d ed. 1957). In the instant case that principle is not applicable as the employment was concededly at will. We need not decide here whether, even where the contract of employment is for a term, the employer may be held on a promise given during the term of an additional benefit to the employee on the theory of the supplemental benefit to the employer from presumably improved morale and service by the employee.
Defendant also argues that there is no evidence that plaintiffs relied upon the promise of severance pay in continuing their employment with defendant and that in the absence of such reliance the promise is not actionable. As authority defendant cites the section of Williston on Contracts referred to above wherein it is said (§ 130B, p. 452) (p. 546 in 1957 ed.): "But, if the purpose and effect of the executory promise of a bonus is to induce the employee to refrain from exercising his liberty of quitting and, in reliance thereon, he does so refrain for the period specified, there is sufficient consideration to render the promise enforceable." But this comment by the author, as will be seen from the entirety of the section quoted, is merely by way of contrasting the remaining in employment after promise of a bonus where the employee was not already bound for service for a term with the situation where he is so bound. In the latter case it is conventionally held, as noted above, that there is no enforceable contract. In the former there is. In that case reliance is presumed, just as it always is presumed that everything an employer agrees to pay or give in return for service by *146 an employee was relied upon by the latter in going to work after being apprised as to the terms of compensation.
As was said in a different context in Diamond v. Davis, 62 N.Y.S.2d 181, 194 (Sup. Ct. 1945):
"Employees have the right to place reliance upon the full performance of every authorized act and plan for employee benefit and welfare, such as group life insurance, retirement allowance, bonus, managers shares, and any other incentive offers. Every benefit firmly offered or authoritatively fixed for an employee or official which in the course of fair dealing and reasonable conduct should be rightfully expected may be regarded as part of or a just increment to the compensation payable for the work, labor or service performed or to be performed in a specified period."
The employer obviously cannot evade liability for one of the proffered items of compensation after the employee has performed his labor by showing that the employee would have taken the job without the particular benefit in question and therefore cannot be said to have relied upon it in doing the work.
It makes no difference that the severance pay plan was promulgated after the plaintiffs had been employed for some time by defendant. Since the employment was always at will, any announcement of a change in or addition to the compensation of the employees of any form followed by the continuance of the employees in employment constituted an effective and binding agreement at the new terms for the service rendered thereafter. Consequently, once defendant improved the terms of compensation for plaintiffs' work by announcing the institution of the severance pay plan it must be assumed that plaintiffs were thereafter working for that benefit as much as for any other benefit or item of compensation held out to them as compensation by the employer.
Suppose, instead of the institution of the severance pay plan, the employer had of its own volition announced a 10% increase in the salary of the plaintiffs. Could the defendant have thereafter repudiated its assumed obligation for the increase at the end of a pay period by the argument that plaintiffs had not relied thereon because they would have *147 continued in their jobs even if the increase had not been announced? The question answers itself and also the defendant's contention here.
We discern no basis for the contention that there are disputes of material fact which should have been submitted to the jury. Subjective considerations are of no materiality here. Defendant overtly offered the severance pay in plain terms under circumstances which were unambiguous and will therefore as a matter of law be taken to have invited acceptance by the plaintiffs' continuance in employment until the stipulated condition for payment of the amounts specified. 1 Williston, op. cit., supra, § 66, p. 190 (p. 213 in 3d ed. 1957). The General Rules of the defendant expressly state that they contain the company's policies as they relate to the "standards of employment and conditions under which our employees, as members of a public utility organization, are expected to perform their work." The work done and the benefits and compensation tendered were clearly the intended quid pro quo for each other.

II.
Defendant additionally argues that the offer of severance pay was ultra vires and void. Reliance is had upon R.S. 14:9-1 et seq., entitled "Beneficial Provisions For Employees," which authorizes corporate issuance of stock to employees, participation by employees in profits and the furnishing to employees of welfare benefits of many kinds, upon the submission of such plans for approval by two thirds of the stockholders after proposal by the board of directors. The defendant contends that the severance pay plan here in question comes within the statute and was required to be approved by the board of directors and the stockholders of the corporation, which was not done.
We conclude that the statute was not here applicable. The statute (R.S. 14:9-5) provides that the privileges and powers conferred therein are in addition to and independent of powers and authority conferred by any other law "and not *148 in restriction or limitation of any of the powers of corporations of this state." Obviously the defendant does not contend that any provision for additional compensation not in the form of direct wages would require approval by boards of directors and stockholders. The only purpose of the statute was to permit the stockholders to allow compensation of a type which in the absence thereof might be regarded as a gift by the corporation. A provision for severance pay, however, is not only not specifically mentioned in the statute but is an increasingly prevalent type of incentive compensation device used by many large corporations. As already observed, it is not gratuitous in any sense; it is part of the quid pro quo.
It is not disputed by the defendant that the executive officers of a corporation have implied power to fix employment compensation. Consequently the promulgation of this plan did not require any concurrence by the board of directors. Moreover, the severance pay provisions were published and circulated among the employees for three years without any dissent or objection on the part of the corporation while the corporation was realizing its presumptive benefits. The plan would therefore by the time of the sale have to be regarded as ratified.

III.
Defendant argues it should have been granted summary judgments as to the plaintiffs Voorhees and Lonsdale, the contention being that both of them resigned, within the intendment of a provision of the severance pay plan which disallows its benefits to employees "resigning." The position is based upon the voluntary signing by these plaintiffs of letters prepared for their signature by defendant stating they had accepted employment with the New Jersey Natural Gas Company effective with the transfer of the gas properties from defendant to that company.
Voorhees filed an affidavit stating he was told by defendant's officials that he could not remain with that company *149 unless he was willing to accept a "serious demotion both in position and salary." He would have to start "at the bottom" in a new location. It appears to us that if this is true, as it must be taken to be on a motion for summary judgment, the refusal of the employee to accept such a demotion and his leaving the defendant as a consequence could not be regarded as a resignation, within the fair meaning of the severance pay provision. Any other result would seriously impair the protection of such provisions. Cf. Mair v. Southern Minn. Broadcasting Co., 226 Minn. 137, 32 N.W.2d 177 (Sup. Ct. 1948); Annotation, 4 A.L.R.2d 276 (1949).
As to the plaintiff Lonsdale's claim, it should first be noted that the defendant had announced that all those employees whose employment concerned both the electric and gas operations would be given the option of remaining with defendant or accepting employment with defendant's vendee. Lonsdale's affidavit indicated that he assumed that his employment with the defendant would be over when it sold the gas business because after 1950, although he had been officially carried on the combined payroll, he had worked exclusively in the defendant's gas division and assumed that there would be no work for him when the gas business of the defendant was sold. His contention is that since the defendant never gave him notice of the fact that it would have other work for him notwithstanding its sale of the gas business, he was justified in assuming that he would be "out" and that consequently his acceptance of employment with the purchaser company does not constitute a resignation.
We conclude that in the cases of each of these employees a resolution of the respective controverted factual issues in their favor would require determinations that they had not resigned and were entitled to severance pay. The orders denying summary judgment to the defendants were correct.
Judgment affirmed, with costs in favor of all plaintiffs except Voorhees and Lonsdale. As to them costs will abide the event of the trial.