James D. HODGSON, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

The GOODYEAR TIRE & RUBBER COMPANY, a corporation, Defendant.

Civ. No. C 70-285.

United States District Court, N. D. Ohio, W. D.

March 22, 1973.

T. J. Pethia, U. S. Dept. of Labor, Cleveland, Ohio, for plaintiff.

Arnold F. Bunge, Jr., Toledo, Ohio, for defendant.

OPINION

DON J. YOUNG, District Judge:

This action was originally commenced on September 30, 1970. It was brought under Section 17 of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.) seeking to restrain the defendant from violating Section 206(d), also known as the Equal Pay Act, and Section 215(a)(2) of Title 29, U.S.C. The action also seeks to restrain the withholding of minimum wages and overtime

compensation due to employees affected by the violations of the Equal Pay Act. In essence, the complaint charges discrimination between the sexes in rates of pay for equal work.

The answer admitted the jurisdiction but denied any discriminatory wage practices in violation of the Equal Pay Act.

The case was tried upon a partial stipulation of facts, and evidence which was offered at a trial lasting two and a half days. It was agreed that the issue as to amount, if any, of unpaid wages would be reserved until the disposition of the issue of violation, and that the statute of limitations would apply to any claims for payments prior to January 3, 1967.

The case was argued by written briefs of great length and complexity which rather confuse the relatively simple basic factual and legal situation.

It is unnecessary to review in detail all of the stipulations and evidence which were offered on the trial of the case. What emerges therefrom is a dispute involving a small number of employees who worked in certain departments of defendant's plant at St. Marys, Ohio, in the job classification of quantity checker. Some of these jobs were in what is referred to as the front end departments, and some in what is referred to as the back end departments.

Originally there were two sub-classifications, quantity checker Class A and Class B, and there was a wage differential of eleven cents per hour between the two classes. All the Class A checkers were women, and all the Class B checkers were men. The Class B checkers were supposed to do heavy weight lifting and moving which was proscribed for the Class A checkers by the Ohio statutes then in force.

Sometime between 1961 and 1963 the defendant made changes in its operations so that after that time the work done by all quantity checkers was equal as to skill, effort, and responsibility, and was performed under similar working conditions. Nevertheless, the wage differential was continued. At that time there were both men and women quantity checkers employed in the front end departments, but only women in the back end departments.

After the effective date of the Equal Pay Act, the plaintiff complained about the defendant's practices at the St. Marys plant, and various proceedings were had which resulted in the pay of the women quantity checkers in the front end departments being increased to equal the rates of pay for the men quantity checkers, and a payment of back wages to the women. There were at that time some three men and seven women quantity checkers in the front end departments.

Thereafter the use of quantity checkers in the front end departments was discontinued, and the one remaining man quantity checker and the remaining women quantity checkers were transferred to the back end departments. At the time of the transfer, the wages of all the transferees were reduced to conform to the rate which had at all times been paid to the women quantity checkers in the back end departments. The last of the men quantity checkers left that position some time in 1972.

It seems too clear to admit of any argument that these facts show a wage discrimination forbidden under the Equal Pay Act. However, the defendant contends that the wage difference resulted not from the different sex of the employees involved, but from the defendant's long established policy of making protective wage rates for certain employees under special limited circumstances, and thus the discrimination is proper under the provisions of 29 U.S.C. § 206(d)(1)(iv) as "a differential based on any other factor other than sex."

This contention has led both parties to offer elaborate arguments as to whether or not the discriminatory rates involved here were so-called "red circle" rates, which are legally permissible. By definition that can be deduced from various rulings and cases, it appears that a "red

circle" rate is a higher rate paid to a particular employee when he is transferred to a job at a lower skill and rate of pay than his former job, either on a temporary basis, to keep him available when he is needed again in his regular, higher paid job, or to avoid hardship when an employee who has served long and faithfully has, by reason of age or illness, became unable any longer to perform his regular work.

It is clear from the evidence in the case that the discriminations here involved cannot be justified as "red circle" rates. The changes were not at all temporary; the higher paid men employees were not transferred from a different job; none of them were old or ill, and none of them exceeded in length of service with the defendant the service of most of the lower paid women employees. The evidence leaves no doubt that the defendant did not have any established policy of using "red circle" rates under factual situations with even the remotest resemblance to what appears in the evidence.

■ The defendant states the issue on the first page of its brief on final argument as follows:

> Where a wage differential between male checkers and female checkers is justified and proper because of differences in work performed, is it a discrimination because of sex and therefore a violation of the Equal Pay Act, 29 U.S.C. § 206(d), to continue that differential with respect to incumbent male checkers after the jobs of the male checkers and female checkers become equal as a result of mechanization?

The language of the statutes is too clear to admit of any answer to that question but "yes". No possible construction of the statute can lead to any other conclusion but that after it became effective, discrimination in pay because of sex was to stop. A negative answer to defendant's question would practically emasculate the statute, for it would countenance a simple device for avoiding the consequences of the statute indefinitely.

Judgment will be entered in favor of the plaintiff enjoining the defendant from violating the provisions of Title 29 U.S.C. §§ 206(d) and 215(a)(2), and also restraining the withholding of minimum wages and overtime compensation. The matter will be continued to a date to be fixed by the Court for the purpose of determining the amount of such wages and overtime compensation.

This opinion will serve as the Court's findings of fact and conclusions of law. Plaintiff may prepare and submit an order expressive thereof, in accordance with the Local Rules of this Court.