226 N.J. Super. 518 (1988)
545 A.2d 185
MARY ANN GRIGOLETTI AND PHYLLIS IMPELLIZERI, PLAINTIFFS-APPELLANTS,
v.
ORTHO PHARMACEUTICAL CORPORATION, DAVID WILLIAMS AND HUGH CONNOR, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 1988.
Decided July 15, 1988.
*521 Before Judges FURMAN, BRODY and LONG.
Fredric J. Gross argued the cause for appellants.
James E. Farrell, Jr. argued the cause for respondents (Epstein Becker & Green, attorneys; James E. Farrell, Jr., of counsel; Patrick Westerkamp, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
Plaintiffs Mary Ann Grigoletti and Phyllis Impellizeri are former employees of defendant Ortho Pharmaceutical Corp. (Ortho), a subsidiary of Johnson and Johnson, Inc. Defendants Hugh Connor and David Williams supervised Grigoletti and Impellizeri at Ortho.
In April 1985, plaintiffs filed separate complaints against defendants. In her complaint, Grigoletti alleged that male employees earned higher salaries than she did for the same work in violation of the Law Against Discrimination (N.J.S.A. 10:5-1 et seq.); that Connor and Williams sexually harassed her and created a hostile work environment contrary to the Law Against Discrimination; that Ortho's refusal to fairly compensate her and to remedy sexual harassment were a breach of an employment contract embodied in the personnel manuals distributed to employees; that Ortho's refusal to pay her for overtime was a violation of an employment contract, and that defendants' conduct amounted to a constructive discharge.
Impellizeri's complaint alleged that the lack of a reasonable merit increase violated an employment contract embodied in personnel manuals distributed to employees; that defendants took retaliatory action against her in violation of the Law Against Discrimination because she objected to the harassment of her co-worker, Grigoletti; that retaliatory action in the nature of a poor performance rating was a breach of the employment contract between the parties, and that she was *522 subjected to age discrimination contrary to the Law Against Discrimination.
Defendants answered, denying the allegations in both complaints. The cases were consolidated. Defendants then moved for summary judgment on all issues. Impellizeri filed a cross motion to amend the complaint to include an allegation of sexual discrimination in wages. Plaintiffs filed cross motions for summary judgment as to the status of Ortho's personnel manual and for discovery. The judge denied defendants' motion for summary judgment as to Grigoletti but granted it as to Impellizeri's allegation of age discrimination; denied summary judgment as to Impellizeri's claims of retaliatory treatment; dismissed both plaintiffs' wrongful discharge claims as precluded by their workplace discrimination claims under the Law Against Discrimination; refused to allow Impellizeri to file an amended complaint, and dismissed both plaintiffs' claims of breach of contract, ruling that plaintiffs' claim that Ortho's personnel manual constituted an employment contract could succeed only by an improper retroactive application of Woolley v. Hoffmann-La Roche, 99 N.J. 284, mod. 101 N.J. 10 (1985). The remaining claims were adjudicated after a bench trial before a different trial judge who rejected them, entering judgment for defendants.
Only two contentions are advanced on this appeal. The first is that the pretrial dismissal of plaintiffs' claim that the Ortho personnel manual constituted an employment contract was error. The second is that the trial judge incorrectly denied plaintiffs relief under the Law Against Discrimination for sexual discrimination in pay. (This contention includes Impellizeri's challenge to the denial of her motion to amend her complaint to assert discrimination in compensation.) We agree with plaintiffs' arguments on these issues and reverse.
The facts in the case relevant to these appellate issues are essentially as follows: In 1983, Ortho, a subsidiary of Johnson & Johnson, which is a company involved in manufacturing, *523 packaging and distributing pharmaceuticals, bought a computer system, called Manufacturing Resource Planning Program (MRP). Thereafter, it formed the MRP project which was a group of individuals, including Grigoletti and Impellizeri, who were responsible for actually implementing the program for Ortho use.
Grigoletti had begun working for another subsidiary of Johnson & Johnson in August 1976 as a clerk at the credit union for a salary of about $8,000 a year. Later, she transferred to Ortho and was promoted to "order coordinator" in the purchasing department, a level seven position.[1] She continued to work in purchasing and was promoted several times, finally to MRP project manager in August 1983. Impellizeri began working for Johnson & Johnson in 1967 and transferred to Ortho in August 1972 as an executive secretary. Over the years she served in numerous capacities through regular promotions and finally became an MRP project manager in August 1983.
Initially, the MRP consisted of four project managers, plaintiffs, Ed Struzick and Alexis Jordan. Later, Michael Esposito was hired. Each project manager was hired for his or her expertise or experience in a particular area of the company and each was assigned to implement a "module" or separate software package. A grade level was not assigned to the position of project manager. Instead, the project managers brought their last grade level with them. Thus, it was considered a "lateral" move. Grigoletti's last position was a grade level 13 which she continued as MRP project manager. Impellizeri's last position was a grade level 15 which also continued.
The following salaries and work history of the MRP managers is uncontroverted:

*524
 NAME LEVEL HIRED EDUCATION SALARY
Alexis Jordan 15 11/81 MBA 1977 $47,200
Michael Esposito 14 11/83 HS+ $44,500
Ed Struzik 14 11/75 BA 1973 $41,600
Phyllis Impellizeri 15 6/67 BA 1982 $38,300
Mary Ann Grigoletti 13 8/76 HS+ $32,000

Defendant Hugh Connor was appointed as the project director. The project managers reported to him. He, in turn, was a member of the steering committee which was responsible for policy decisions concerning the MRP project. The head of the steering committee was Connor's supervisor. Defendant David Williams was also a member of the steering committee.
Soon after the project began its work it was plagued by organizational, personnel and supervision problems involving the project managers and Connor to whom they reported. In early January 1983, Grigoletti and Impellizeri brought the problems to the attention of Williams. They voiced their objections to Connor's leadership and management style and explained there was dissension among the team members. They also complained about Connor's personal attacks on Grigoletti. (At the hearing, Grigoletti testified in detail about Connor's belittling treatment of her which testimony was corroborated by Impellizeri and another co-worker, Cynthia Salim.)
An outside consulting firm was brought in to help the team work out its problems. The problems continued, and in May 1984, Impellizeri drew up a written report for Williams. The outside consulting firm was brought in again but to no avail. In June 1984, the steering committee removed Connor as director. He was replaced by Elizabeth Robinson who remained in that position until the project was completed in 1985.
In December 1984, Impellizeri was taken off the project. She had completed her module and her evaluation by her supervisor, Robinson, indicated an average performance and no potential. This was based on a recommendation by Williams and his staff. She was transferred to the position of contract buyer in purchasing *525 which was in a lower grade. She was therefore not entitled to executive bonuses or stock contracts. Impellizeri claims that this occurred in retaliation for her objections to Connor's treatment of Grigoletti. (The trial judge agreed.) Thereafter, she resigned. Grigoletti resigned in March 1985.
We turn first to plaintiffs' contention that their claim that Ortho's personnel manual constituted an employment contract should not have been dismissed as a matter of law. In Woolley, the Supreme Court held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." 99 N.J. at 285-286.
Here, the trial judge dismissed plaintiffs' Woolley claims in 1987 because he concluded that Woolley, which was decided in 1985, should not be applied retroactively to plaintiffs' causes of action which arose in 1983. Relying on the decision in Bimbo v. Burdette Tomlin Memorial Hosp., 644 F.Supp 1033 (D.N.J. 1986), the trial judge concluded that to apply a significant change in the law (Woolley) retroactively would be unfair to those "who had previously acted in reliance [on] the prior state of the law." We disagree with both underpinnings of this conclusion. In our view, Woolley was not a sharp break with prior law, and fundamental fairness would not bar its application if facts such as those alleged here are proven.
As to whether Woolley broke new ground, the Woolley court itself observed that its decision was generally foreshadowed by the rule announced in Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 72 (1980), a case involving the corporate defendant in this case (Woolley, supra, 99 N.J. at 291-93). In addition, the Woolley analysis replicated in detail an approach enunciated years earlier by the court in Anthony v. Jersey Central Power & Light Co., 51 N.J. Super. 139 (App.Div. 1958). In Anthony, we held that when an employer posted a notice stating that *526 managerial employees would enjoy the same pension benefits as union employees, this was an enforceable promise. Woolley relied on our decision in Anthony:
[I]n Anthony v. Jersey Cent. Power & Light Co., supra, 51 N.J. Super. 139, practically every contractual objection that could be made here was disposed of by the Appellate Division in the context of a claim for pension rights by supervisory personnel based on a company manual (entitled "General Rules"). There, the defendant-employer argued that its severance-pay rule was a mere gratuitous promise, not supported by consideration. The court responded, analyzing the promise as an offer of a unilateral contract and the employees' continued services as sufficient acceptance and consideration therefor. Id. at 143. To the defendant's argument that there was no evidence of reliance upon its promise, the Anthony court responded that reliance was to be presumed under the circumstances. Id. at 145-46. We agree. (foonote omitted). [99 N.J. at 304].
Thus, Woolley was not only foreshadowed by Pierce but by Anthony which had stated the law 25 years earlier.
Further, even if Woolley could be viewed as a significant break with tradition, that conclusion would not automatically support the dismissal of plaintiffs' claims in this case. The theory underpinning prospective application of important changes in the law is that retroactivity is unfair to those who relied on the prior state of the law. Buono v. Teachers' Pension, etc. Fund Trustees, 188 N.J. Super. 488 (App.Div. 1983) certif. den. 94 N.J. 522 (1983). Here, plaintiffs contend that Ortho voluntarily published a set of employment promises in the manual upon which the plaintiffs relied and that Ortho failed to live up to those promises. Assuming that these claims are established, Ortho's only unfairness defense to the retroactive application of Woolley would have to be that it never intended to live up to the promises contained in the manual it published, and upon which its employees allegedly relied. That argument will not wash. If plaintiffs claims are proved, there would be nothing unfair about holding Ortho to workplace standards it voluntarily promulgated.
It is true that plaintiffs' claims go beyond the specific holding in Woolley in that they seek to enforce other than termination *527 provisions of the personnel manual against Ortho.[2] Grigoletti's complaint alleges that defendant's refusal to fairly compensate her, to pay for her overtime, and to remedy the sexual harassment against her broke promises in the manual. Impellizeri's complaint alleges that defendant's refusal to award her a reasonable merit increase and the retaliatory action taken against her for objecting to harassment of Grigoletti broke provisions in the manual. The manual does include guidelines for overtime compensation and procedures for complaints and grievances which set forth how the personnel department will remedy problems. There is no clear and prominent disclaimer to insulate the company from having provisions of this manual enforced against it.
In this respect, the Woolley court called for an unconstrained application of its decision. It noted that when an employment manual
provides that certain benefits are an incident of the employment (including, especially, job security provisions), the judiciary, instead of `grudgingly' conceding the enforceability of those provisions, . .. should construe them in accordance with the reasonable expectations of the employees. [99 N.J. at 297-298.]
In our view, there is no legal impediment to the enforcement of the provisions of the employment manual against Ortho in accordance with the language in Woolley noted above. Accordingly, we reverse the trial judge's dismissal of plaintiffs' claims based upon the manual and remand those issues for trial. In accordance with Woolley's instructions (99 N.J. at 284), plaintiffs will be required to prove the content and meaning of the provisions of the manual which they have invoked; that the manual constituted a promise upon which one or both plaintiffs *528 relied; that the promise was not kept, and that ascertainable damages flowed from the breach. In ruling as we have, we do not venture an opinion as to whether plaintiffs' Woolley claims will be sustained. There is no record before us to support any conclusion on that issue.
Plaintiffs next advance the argument that the trial judge erred when he concluded that they had failed to establish a violation of the New Jersey Law Against Discrimination. This contention has several prongs: that the Law Against Discrimination prohibits unequal pay for equal work, that we should adopt an Equal Pay Act analysis as the standard in such cases, and applying those standards, that they made out a Law Against Discrimination violation in this case.
Defendants defend against these arguments only on procedural grounds. Citing Domestic Fuel Co. v. American Petroleum Corp., 6 N.J. 538, 542 (1951); Skripek v. Bergamo, 200 N.J. Super. 620 (App.Div. 1985), certif. den. 102 N.J. 303 (1985), they urge that because plaintiffs failed to allege a violation of the Equal Pay Act in the complaint, they are barred from advancing this theory for the first time on appeal. Rather clearly, however, plaintiffs are not claiming entitlement to relief under the Equal Pay Act but under the Law Against Discrimination which Grigoletti invoked in her complaint; Impellizeri was rebuffed when she sought leave to amend her complaint to assert an identical claim. Thus, there is no procedural bar to our consideration of this issue.
The Law Against Discrimination provides that:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of the ... sex of any individual ... to discriminate against such individual in compensation.... [N.J.S.A. 10:5-12 a.]
In our view, this statute facially encompasses plaintiffs' claims that defendants discriminated against them in terms of their compensation because of their sex. Indeed, in Decker v. Bd. of Education of City of Elizabeth, 153 N.J. Super. 470 (App.Div. 1977) certif. den. 75 N.J. 612 (1978), we recognized *529 that the Law Against Discrimination specifically contemplates this kind of an action. There, the Division on Civil Rights determined that defendant had "discriminated against its employee..., a cook-manager, on account of her sex, in paying her a lower salary than that of a male employee performing the same function, in violation of N.J.S.A. 10:5-12(a)." Id. at 472. We held that the finding by the Division that plaintiff was denied equal pay on the basis of sex in violation of the Law Against Discrimination was "supported by sufficient credible evidence in the record as a whole." Id. at 475.
Likewise, in Healey v. Tp. of Dover, 208 N.J. Super. 679 (App.Div. 1986), where the claim was also sex discrimination in compensation contrary to the Law Against Discrimination, we stated that if there was discrimination in salary, it occurred during the plaintiff's employment when "she was not equally paid." Id. at 683. We went on to hold that evidence that the plaintiff's male replacement was paid a higher salary because of his sex was admissible on her claims of discrimination in compensation during her employment. Id. at 683-684. These cases recognize that a claim of unequal pay for equal work is cognizable under the Law Against Discrimination.
Plaintiffs contend that they made out a prima facie case by introducing evidence that all MRP managers "performed essentially the same task for two years" (a specific finding of the trial judge) and that they were paid less than the two males. This, according to plaintiffs, shifted the burden to defendants to account for the differential treatment on a nondiscriminatory basis which they failed to do. Accordingly, plaintiffs urge that the judgment in favor of defendants requires reversal. We agree.
No New Jersey case has clearly set forth the elements of a prima facie case in this context. Federal courts, however, have grappled with this issue in connection with Title VII, after which the New Jersey Law Against Discrimination was modeled, and from which our Supreme Court has suggested that we *530 take our lead where Title VII standards are fair and useful. Peper v. Princeton University Board of Trustees, 77 N.J. 55 (1978); Goodman v. London Metals Exch. Inc., 86 N.J. 19, 30 (1981); Fuchilla v. Layman, 109 N.J. 319, 345 (1988) (Handler, J., concurring).
Title VII prohibits discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e-2(a)(1). The Equal Pay Act prescribes that:
No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: [29 U.S.C. § 206(d)(1)]
The protections which Title VII provides with respect to sex discrimination in the workplace are broader than those of the Equal Pay Act. Gunther v. County of Washington, 623 F.2d 1303, 1311 (9th Cir.1979) aff'd 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). Van Heest v. McNeilab, Inc., 624 F. Supp. 891, 898 (D.Del. 1985) (jobs not sufficiently similar to support Equal Pay Act claim do not preclude Title VII relief). However, as applied to claims of unequal pay for equal work, Title VII has always been read in pari materia with the Equal Pay Act. Laffey v. Northwest Airlines Inc., 567 F.2d 429, 446 (D.C. Cir.1976). Thus, on this subject, the same facts which establish a violation of the Equal Pay Act establish a violation of Title VII, 42 U.S.C. § 2000e-2. Id. at 445. Indeed, the Bennett Amendment to Title VII, 42 U.S.C. § 2000e-2(h), makes all Equal Pay Act defenses applicable to equal pay claims under Title VII in order to ensure the same result in unequal pay claims arising under either statute. Fitzgerald v. Sirloin Stockade, Inc., 624 F.2d 945, 953 (10th Cir.1980). Under the Equal Pay Act, plaintiff must show that a member of one gender receives less money than a member of the other *531 gender for the same work. The burden of proof then shifts to defendant to prove that the reasons for the pay differential are within the exceptions laid out in the act. See Shultz v. Wheaton Glass Company, 421 F.2d 259, 266 (3d Cir.1970) cert. den. 398 U.S. 905, 90 S.Ct. 1696, 26 L.Ed.2d 64 (1970). We think this approach is a rational one and adopt it here.
The trial judge found that the MRP managers were "assigned to perform essentially the same task for two years." He also found that the managers received varying scales of compensation and that plaintiffs received less than the two men on the project. There was sufficient credible evidence in the record to support these findings. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974). This shifted the burden to defendants to come forward with a nondiscriminatory explanation for the salary differentials. Defendants claimed that because Alexis Jordan was paid more than the men on the project, no discrimination against women could be shown. The trial judge agreed, and this is where we part company from him. The claim that Jordan, who was the only project manager with an MBA degree, was paid more than everyone on the project does not meet defendants' burden of explaining why both plaintiffs who are women, were paid significantly less than both men on the project though their credentials were comparable and their work equal. The fact that one member of a protected group is not a victim of wage discrimination simply does not mean that the rest of the protected class is precluded from establishing discrimination.
Defendants also argued that because they showed that each employee brought his or her present pay scale to the project, they met their burden of coming forward with a nondiscriminatory explanation for the pay differentials. The trial judge alluded to this in passing in his opinion. But it seems clear to us that a sex-based wage differential violates the act where, as here, a change in the employment situation results in equal work being performed by men and women at different *532 pay scales. It should make no difference that the wage differentials are residuals of earlier employment, when the same men and women had performed unequal work. Hodgson v. Goodyear Tire & Rubber Co., 358 F. Supp. 198 (N.D.Ohio 1973). Where, as here, people with comparable skills, experiences and responsibilities are transferred into a new position where they will perform substantially identical tasks for two years, the Equal Pay Act and our Law Against Discrimination impose upon management an affirmative obligation to make certain that similarly situated women are not paid less than their male counterparts.
We thus reverse and remand this issue for a trial on damages. In so doing, we reverse the trial judge's denial of Impellizeri's leave to amend her complaint to include a claim of discrimination in compensation contrary to the Law Against Discrimination. Though tardily made, the motion should have been granted because defendants could not have been prejudiced by it. They had notice of this precise claim by Grigoletti from the beginning of the litigation.
NOTES
[1] Positions at Ortho have corresponding "grade levels." Each level is assigned a salary range. For example, in 1983 level 13 had a salary range of $27,300 to $40,860.
[2] Specifically, plaintiffs point to several sections of the manual: 30.10 which makes harassment a proper subject for grievance; 30.3.2 which makes harassment and gossiping punishable; 140.2 which provides that grievances may be brought to the attention of the personnel office, and section 20.5.4 which states that Ortho will make "every effort" to make the employees' salary, upon transfer to a new position, "compare reasonably with the salaries of other employees who are currently in the new position."