Publix Drug Company, Appellant, *v.* Breyer Ice Cream Company.

Argued April 21, 1943. Before MAXEY, C. J. DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Morris Wolf,* with him *Sigmund H. Steinberg, Samuel J. Gottesfeld* and *Blanc & Steinberg,* for appellant.

*Joseph Gilfillan,* of *Gilfillan, Gilpin & Brehman,* for appellee.

Opinion by Mr. Justice PARKER, May 26, 1943:

The plaintiff in this action charged that the defendant "wilfully, maliciously and without any reason therefor" caused two judgments to be entered by confession against plaintiff to its serious damage. A jury returned a verdict for $12,000 against defendant and the court below entered judgment n. o. v. in favor of defendant. Plaintiff has appealed. The judgment must be affirmed.

On June 27, 1939, Breyer Ice Cream Company entered judgments by confession on two judgment notes payable to it. One note was for $2,891.81, dated August 31, 1937, signed by Publix Drug Co. and Maurice A. Spielman, and the other was for $2,000, dated June 16, 1938, signed "Maurice A. Spielman (Seal) t/a Publix Drug Co. (Seal)". On July 19, 1937, Publix obtained rules to show cause why the judgments should not be stricken off. It alleged in the petition to strike off the larger judgment that the note had been paid prior to its entry. Breyer replied that it had been agreed between the parties that the note should be held as security for an open account on which there was yet due an amount much larger than the judgment. On September 26, 1939, the rule was discharged. On November 30, 1939, Publix paid to Breyer its entire indebtedness. In the meantime

a motion for reargument was filed. After further argument the motion was refused. A memorandum opinion stated: "At the reargument . . . it was stated by counsel for plaintiff that the defendant had paid the debt and he owed nothing and requested an order to satisfy. The question is now moot and the rule is now discharged." Breyer satisfied this judgment on January 8, 1940, as it was required to do on its own theory of the case.

In the petition to strike off the $2,000 judgment it was not alleged by Publix that the note had been paid. Breyer insisted that there was still a balance due thereon. The court below made absolute the rule to show cause why the judgment should not be stricken off on the technical ground that it was not signed as the obligation of a corporation should be. On December 1, 1939, Breyer satisfied this judgment.

The court below was of the opinion that the action was one for malicious *use* of civil process and that, as there was no proof of interference with plaintiff's property or proof that the prior proceeding had terminated in plaintiff's favor, the verdict could not stand.

Decisions in this state and in other jurisdictions have drawn a distinction between actions for *abuse* of legal process and those for malicious prosecution, which, when founded on civil prosecutions, are usually described as *malicious use* of civil process. The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it: *Mayer* v. *Walter,* 64 Pa. 283; Annotation, 80 A. L. R. 581. "An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it . . . On the other hand, legal process, civil or criminal, may be maliciously used so as to give rise to a cause of action where no object is contemplated . . . other than its proper effect and execution": *Mayer* v. *Walter,* supra, p. 285; *Johnson* v. *Land Title B. & T. Co.,* 329 Pa. 241, 242, 198 A. 23. Malicious use of civil process has to do with the

wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued. All the analogies of an action for a malicious arrest belong to an action for malicious use of civil process.

In an action for malicious arrest of the person the defendant is excused when any one of the following conditions is fulfilled: "either (a) the plaintiff was in fact guilty of the wrong as charged (just cause); or, (b) the defendant [in the civil case] believed and had probable ground to believe the defendant [in the criminal case] guilty (just cause); or (c) the defendant resorted to legal process for the purpose of securing justice upon the plaintiff, and not primarily to gratify personal malice or spite": *Altman* v. *Standard Refrig. Co.,* 315 Pa. 465, 478, 173 A. 411. By analogy the same essentials are applicable to an action for malicious use of civil process: *Johnson* v. *Land Title B. & T. Co.,* supra; *Beadle* v. *Friel,* 320 Pa. 560, 183 A. 761. The plaintiff has the burden of pleading and proving these conditions although they are negative in form. It was essential in this case that plaintiff should show that the judgments were entered with malice, without probable cause to believe that the defendant could succeed, and that the original actions finally ended in failure.

If action had been begun on these two notes by summons it would be clear that the action would be one for malicious use of civil process. Here it was started by entering judgments on the powers in the notes. It is just as clear that these present actions had to do with the initiation of proceedings and not the perversion of them. Actions similar to these—judgments entered by warrant of attorney—have been identified by the Superior Court as actions for malicious use of civil process: *DeGeyter* v. *Keller,* 68 Pa. Superior Ct. 419.

There is here, however, a controlling bar to recovery. We have consistently held in this state that in an action for malicious use of legal process the action will not lie

if there be no interference with the plaintiff's person or his property. Here the defendant stopped with the entry of the judgments and did not take any action against the plaintiff or its property. It will be noted that there is no evidence that the plaintiff had any real estate on which the judgments were a lien. Chief Justice SHARSWOOD in *Mayer* v. *Walter,* supra, p. 289, said: "Now, undoubtedly, a mere suit, however malicious or unfounded, cannot be made the ground of an action for damages. If the person be not arrested or his property seized, it is unimportant how futile and unfounded the action may be; as the plaintiff, in consideration of law, is punished by the payment of costs: Ray v. Law, 1 Peters C. C. 210, Kramer v. Stock, 10 Watts 115." The remarks of Mr. Justice GORDON in *Muldoon* v. *Rickey,* 103 Pa. 110, are peculiarly pertinent. There the action was ejectment and there was an attempt to set up special damages just as here. It was said (pp. 112-113) : "The action of ejectment temporarily clouds the title to the property in controversy, and so may for the time prevent a sale of or mortgage upon it. But a damage of this kind is not more direct than that resulting from the expenses, loss of time, and often loss of credit, arising from the ordinary forms of legal controversy. All are troublesome, expensive and often ruinous, and if for such damage the action of case could be maintained, there would be no end of litigation, for the conclusion of one suit would be but the beginning of another. It has, therefore, been wisely determined that for the prosecution of a civil suit, however unfounded, where there has been no interference with either the person or property of the defendant, no action will lie." To the same effect is *Eberly* v. *Rupp,* 90 Pa. 259, where the action was based on a writ of estrepement. See also *Beadle* v. *Friel,* supra. The plaintiff having failed to show any interference with its property, the action failed.

The rule adopted by this court has been followed in England since the Stat. of Marlbridge (52 Henry III)

and in many other of our states, but has not been followed in some jurisdictions. See Annotation, L. R. A. 1918 D 550.

The judgment is affirmed.