JOSEPH BANCROFT & SONS CO.
v.
SHELLEY KNITTING MILLS, INC.,
Appellant.
No. 15664.

United States Court of Appeals
Third Circuit.

Argued Nov. 29, 1966.

Decided March 8, 1967.

Rehearing Denied April 20, 1967.

---

Philip P. Kalodner, Philadelphia, Pa., (Harry Shapiro, Harold Cramer, Arnold B. Cohen, Shapiro, Stalberg, Cook, Murphy & Kalodner, Philadelphia, Pa., on the brief), for appellant.

Thomas M. Marshall, New York City, (Ralph L. Chappell, New York City, Thomas N. O'Neill, Jr., James H. Callahan, Kenyon & Kenyon, New York City, C. Brewster Rhoads, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., on the brief), for appellee.

Before SMITH, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Shelley Knitting Mills, Inc. appeals from a preliminary injunction restraining it from prosecuting two civil actions which it brought in the state courts of Pennsylvania against Joseph Bancroft & Sons Co.

The litigation between the parties originated in 1958 in a suit by Bancroft against Shelley for trademark infringement, unfair competition and breach of contract. After a lengthy trial in 1962[1] the district judge filed an adjudication on December 26, 1962 containing 174 findings of fact and 18 conclusions of law in which he found that Shelley had infringed Bancroft's trademark and had been guilty of unfair competition and that Bancroft was entitled to an accounting for profits by Shelley, which in the meanwhile had gone into bankruptcy. A permanent injunction was refused because of the absence of irreparable damage and because Shelley had discontinued business, but the district court retained jurisdiction pending final determination of Bancroft's damage claim.

On September 11, 1963, while the accounting was still pending before a special master appointed by the court, Shelley instituted the two civil actions which give rise to the present controversy, in the Courts of Common Pleas of Philadelphia County, Pennslyvania. One was against Bancroft alone, and the other was against Bancroft, a licensee of Bancroft and four individual officers or employees of Bancroft and of the licensee. The action against Bancroft alone was removed to the district court. In each suit Shelley alleged that Bancroft's action against it in the district court was brought for the purpose of driving it out of business and not for its ostensible purpose of proving trademark infringe-

---

[1] We had earlier reversed the award of a preliminary injunction because there was no showing of irreparable injury. Joseph

Bancroft & Sons Co. v. Shelley Knitting Mills, Inc., 268 F.2d 569 (3 Cir. 1959).

ment and unfair competition. In the action against Bancroft and the four individual defendants, Shelley alleged additionally that the defendants had conspired to drive it out of business and that the original suit was an overt act in furtherance of the conspiracy.

Thereupon on November 1, 1963 Bancroft filed in its original action in the district court a motion "in aid of and for the protection and effectuation of [the] * * * court's jurisdiction over the parties and the subject matter of this action and its Adjudication and judgment in this action entered December 26, 1962," to enjoin Shelley from prosecuting its two actions. On December 28, 1964 the court filed a memorandum opinion in which it stated: "Since the present suit is still within our jurisdiction, we deem it legally incumbent upon this Court to make a full inquiry into the motivation and purpose in the institution of this suit. It is a postulate of the legal order * * * that 'a court may not permit its process to be abused,'" citing United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). The court accordingly set a further hearing for the submission of such additional evidence "as may be relevant and appropriate."

At the time fixed for the hearing neither of the parties presented any additional evidence, although the district judge gave them a full opportunity to do so. Shelley, however, later presented a petition requesting that the court withdraw its decision to investigate and make additional findings, on the ground that Shelley had made known to the court and to Bancroft and its counsel as early as December 1959 its intention to sue Bancroft for malicious abuse of process. Bancroft answered the petition, denying that Shelley had made any such claim and alleging on the contrary that Shelley had only made known an intention to sue Bancroft for malicious use of process or wrongful initiation of civil proceedings in the event that Bancroft's action proved unsuccessful. In support of this Bancroft also alleged that Shelley had ob-

tained the permission of the Bankruptcy Court in January 1960 to employ counsel to sue Bancroft if its action ultimately should be decided in favor of Shelley.

On September 2, 1965 the district judge filed an opinion, 245 F.Supp. 523, and entered an order in which, after reciting that he had reviewed the trial record, he denied Shelley's petition to vacate the order of December 28, 1964 and supplemented his adjudication of December 26, 1962 by adding findings of fact nos. 175 to 177 inclusive and conclusions of law nos. 19 to 21 inclusive. In these supplemental findings and conclusions the district judge stated that Bancroft had instituted and prosecuted its action in good faith and for its ostensible purpose, with no intention to vex, harass or oppress Shelley or to ruin or to drive it out of business and that Bancroft and its officers, employees, agents and attorneys had not conspired among themselves or with others to do so. In the supplemental conclusions of law he stated that Bancroft brought its action solely for the purpose of obtaining an adjudication of its bona fide controversy with Shelley, that there was no malicious abuse of process, and that Bancroft's action was not part or the result of any conspiracy to ruin Shelley or drive it out of business. The order accordingly declared: "Pending final judgment in this action, Shelley Knitting Mills, Inc., its assignees or successors, are enjoined and restrained from further prosecution of or proceeding in" the two civil actions brought by Shelley, "unless this Court shall sooner otherwise order." It is from this injunction that Shelley has appealed.

In the course of his opinion, the district judge recorded that he had been led to conclude, "apparently mistakenly," that the remarks which Shelley's counsel had repeatedly made in his presence during the trial, which charged Bancroft with bad faith in instituting the action and his statements that Shelley intended to sue Bancroft for abuse of process had been made "for tactical and sundry other reasons * * * with tongue in cheek."

The court then went on to say that "although we made no specific findings on these issues which were not among those framed at final pre-trial conference, our adjudication in Bancroft's favor necessarily reflected our conclusion that Bancroft brought the action in good faith and with no ulterior motive.

\*   \*   \*   \*   \*   \*

"As already stated, implicit in our adjudication in Bancroft's favor was a finding of Bancroft's good faith. \* \* \* If our specific findings should embarrass Shelley in the trial of its two suits, it is because Shelley itself repeatedly challenged Bancroft's good faith in the instant suit by statements and threats of suit made in the presence and hearing of the trial judge. Once it became evident that Shelley's challenges and threats were serious, the issues were in this case and it was our obligation to decide them even though Shelley may have deliberately refrained from tendering these issues at pre-trial conference in the hope that, if Bancroft prevailed, Shelley would have preserved these issues for another trial and, possibly, another forum. In light of the necessity to protect the integrity of the Court's own process we were not free to ignore Shelley's charges of bad faith, conspiracy and malicious abuse of process in the very institution and prosecution of Bancroft's suit."

The argument before us attacks the district court's power to make the findings of fact and conclusions of law which underlie the injunction. Shelley contends that these findings are irrelevant to Bancroft's suit against it, which is all that was before the court. Bancroft urges, on the other hand, that courts of justice have inherent power to protect the purity of their own process and on their own motion or even on the suggestion of a stranger may undertake to determine whether their process has been abused, especially where the case is still pending and no final judgment has been entered. Shelley replies that this rule has no application where the suit is for malicious *abuse* of process rather than malicious *use* of process, because it is extraneous to the merits of the controversy in the first proceeding.[2] It points out that the extensive findings of fact and conclusions of law in the adjudication of December 26, 1962 contain no mention of Bancroft's intention or motive in instituting its suit against Shelley. Shelley also argues that in any event the court's action invades its constitutional right to trial by jury on its claims of malicious abuse of process. To this Bancroft answers that Shelley waived any right it may have had to trial by jury because it did not demand a jury trial during the proceedings before the district judge, either in its response to Bancroft's motion to enjoin the prosecution of Shelley's two actions, or in its petition for the withdrawal of the court's order of December 28, 1964.

■■ In our view it is unnecessary to determine whether the court below had power to enjoin Shelley from prosecuting

---

2. In the leading case of Mayer v. Walter, 64 Pa. 283, 285–286 (1870), Sharswood, J., said: "There is a distinction between a malicious use and a malicious abuse of legal process. An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it. Thus, if a man is arrested, or his goods seized in order to extort money from him, even though it be to pay a just claim other than that in suit, or to compel him to give up possession of a deed or other thing of value, not the legal object of the process, it is settled that in an action for such malicious abuse it is not necessary to prove that the action in which the process issued has been determined, or to aver that it was sued out without reasonable or probable cause: Grainer v. Hill, 4 Bing.N.C. 212. It is evident that when such a wrong has been perpetrated, it is entirely immaterial whether the proceeding itself was baseless or otherwise. We know that the law is good, but only if a man use it lawfully." See also Johnson v. Land Title Bank & Trust Co., 329 Pa. 241, 198 A. 23 (1938); Publix Drug Co. v. Breyer Ice Cream Co., 347 Pa. 346, 32 A.2d 413 (1943); Dumont Television & Radio Corp. v. Franklin Electric Co. of Philadelphia, 397 Pa. 274, 154 A.2d 585 (1959); Wheeldin v. Wheeler, 373 U.S. 647, 655–656, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963), Brennan, J., dissenting.

its actions for malicious abuse of process. For even if the power exists, we believe that it should not have been exercised in the existing circumstances. The adjudication of the merits of an action before the court ordinarily is the limit of its duty. There may, of course, exist circumstances so unusual in their nature that a court should determine the intention with which the litigation is brought in order to avoid hearing a collusive action or one which does not represent a justiciable controversy.[3] This, however, is not such a case. The court had already adjudicated the merits of the controversy dealing with trademark infringement and unfair competition and it was only after a long lapse of time and because Shelley had instituted its state court actions for malicious abuse of process that the present effort was made to determine in the present action, which was simply awaiting the assessment of damages, whether there was merit in what Shelley had now claimed in its two state court actions.

It is undesirable for a federal judge to look over his shoulder long after he has decided a case on the merits and then undertake to determine whether the successful party had brought the action for an improper purpose, and this is especially so where this purpose has already been made the subject matter of separate litigation. What was done in this civil action is not much different in principle than it would be for a judge in a criminal proceeding at the private prosecutor's request to determine from the evidence before him whether the proceeding was initiated on probable cause and to prohibit by injunction or forestall by collateral estoppel a later action by the successful defendant against the private prosecutor for malicious prosecution, although, of course, in a criminal case there are also other limitations.

Although the action of the court below was expressed in the form of a vindica-

tion of the purity of its processes, what is realistically involved constitutes no affront to the dignity or authority of the court, but involves simply a claim that a right to damages exists against one who improperly employed the right subsisting in a valid cause of action to the damage and injury of his adversary. Such a claim is entitled to the independent determination which Shelley has invoked, and not to an adjudication subordinated to the merits of the cause of action which Shelley claims is not determinative, even if it is valid, of the suit for malicious abuse of process. In the present unusual circumstances, Shelley is entitled to maintain its separate actions in which it demanded trial by jury. Its preference to stay outside the jurisdiction of the chancellor who decided the original case against it and to submit to a state court jury its claim that the action which it had lost in the federal court constituted a malicious abuse of process, should be preserved. The fundamental separateness of the actions for abuse of process from the action for trademark infringement and unfair competition is not altered because one of the actions was removed to the federal court.

In holding that the court below should have declined to interfere with the separate actions which Shelley originally brought in the state courts, one of which is still pending there against Bancroft and the individual defendants, we also effectuate the policy which prohibits the federal courts from lightly granting injunctions against proceedings in state courts. This policy is now expressed in 28 U.S.C. § 2283: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."[4]

Whatever "inherent" effect the extensive findings of fact and conclusions of

---

3. See generally Hart & Wechsler, The Federal Courts & the Federal System (1953), pp. 114–19, 126–30; Wright, Federal Courts (1963), § 12.

4. See generally Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1045–53 (1965); Note, 74 Harv.L.Rev. 726 (1961); Comment, 114 U.Pa.L.Rev. 561 (1966).

law which the court below made in its original adjudication may have as collateral estoppel against Shelley in its independent actions will be a matter for determination there. Shelley is entitled to have this decided independently and not as an interstitial addition made long after the decision on the merits in Bancroft's action against it.

The judgment of the court below enjoining and restraining Shelley from further prosecuting its Civil Action No. 34,244 against Bancroft and its action against Bancroft and others in the Court of Common Pleas No. 1 at Philadelphia County at June Term, 1963, No. 5522, and the supplemental adjudication on which it was based will be vacated with direction to dismiss without prejudice Bancroft's motion to enjoin Shelley from prosecuting its two pending suits.