Jason HORNE, Plaintiff,

v.

George A. FARRELL, Constable, et al., Defendants.

Civ. A. No. 82–0950.

United States District Court,
M.D. Pennsylvania.

Jan. 28, 1983.

Gregory Paulson, Paulson, Suarez & Munson, Lancaster, Pa., for plaintiff.

James K. Thomas, Thomas & Thomas, Harrisburg, Pa., for Krafxig, Gardner & Comm. Credit Plan.

Howland W. Abramson, Philadelphia, Pa., for Hardy.

Linus E. Fenicle, Gregory Ernico, Harrisburg, Pa., for Farrell.

## MEMORANDUM

RAMBO, District Judge.

Jason Horne has filed suit against the five defendants because of an incident which occurred on February 18, 1982. Horne was present in the offices of Pennsylvania District Justice Paul H. Hardy to defend an action instituted against him by Commercial Credit Plan Consumer Discount Company. Apparently upon Horne's arrival at Hardy's office, he was informed of a delay in the hearing and was requested or was directed by Constable George A. Farrell to enter into a closed room. Also in the room was a representative or agent of Commercial Credit. The identity of this third person is disputed by the parties. The name "Gardner" is used in the pleadings and brief. As a result of what was said and done in the closed room, Horne signed an agreement admitting liability and agreeing to pay the debt in full.

The plaintiff alleges that Constable Farrell threatened and coerced him into signing the agreement. Constable Farrell was wearing a weapon which plaintiff claims was very conspicuous.

District Justice Hardy became part of the activity when he signed or had his signature affixed to the disposition portion of the trespass and assumpsit complaint. Judgment was entered in favor of Commercial Credit in the amount which was "agreed to" by Horne in the closed room.

Attorney Krafsig was counsel for Commercial Credit in the suit on the debt. His involvement was in filing the complaint against Horne and his receiving or his office receiving two subsequent payments on the debt.

The plaintiff alleges causes of action against Farrell under the equal protection clause of the fourteenth amendment; the due process clause of the fourteenth amendment; Title 42 of the United States Code, § 1983; Title 42 of the United States Code, § 1985; the Fair Debt Collection Practices Act, Title 15 of the United States Code, § 1692; false imprisonment; abuse of process; and intentional infliction of emotional distress. The causes of action alleged against the remaining defendants are violations of the equal protection and due process clauses of the fourteenth amendment; Title 42 of the United States Code §§ 1983 and 1985, and the Fair Debt Collection Practices Act.

The defendants have all filed motions to dismiss for failure to state a claim upon which relief can be granted. Federal Rule of Civil Procedure 12(b)(6). The standard in evaluating a motion under Rule 12(b)(6) was set out in *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Supreme Court said:

in appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dis-

missed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* at 45–46, 78 S.Ct. at 102.

The plaintiff has alleged violations of the due process and equal protection clauses of the fourteenth amendment and sections 1983 and 1985 of Title 42 United States Code. The purpose of the Civil Rights Act of 1871, from which § 1983 is derived, is made clear from the title of the legislation: "An Act to enforce the Provisions of the Fourteenth Amendment to the Constitution of the United States, and for other Purposes." 17 Stat. 13 (1871). *See Monroe v. Pape,* 365 U.S. 167, 171, 81 S.Ct. 473, 475, 5 L.Ed.2d 492 (1961) overruled on other grounds *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 663, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611 (1978). The plaintiff would have this court allow him both a cause of action for damages under § 1983 and an implied cause of action under the fourteenth amendment via 28 U.S.C. § 1331. The action directly under the fourteenth amendment would be analogous to the cause of action implied in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (implied under the fourth amendment); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (implied under the fifth amendment); and *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980) (implied under the eighth amendment).

The courts in the Fifth Circuit have considered on a number of occasions the issue of implying a cause of action from the fourteenth amendment. *See Strong v. Demopolis City Board of Education,* 515 F.Supp. 730, 732 n. 1 (S.D.Ala.1981). The results arrived at have been contradictory. Judge Hand, in an extensive footnote in *Strong,* explains the difficulty. *Id.* Judge Hand concludes by saying:

Analytically, the sounder approach would be *not* to imply a cause of action under the fourteenth amendment. Congress has provided, in the body of § 1983,

a remedy to plaintiffs who are wronged by "persons" acting under "color of state law" where the plaintiff has a right, privilege, or immunity secured by the Constitution or federal laws which is infringed. Section 1983 is coextensive in scope with the fourteenth amendment. By contrast, no specific legislation provides aggrieved plaintiffs with a remedy when protections of the Bill of Rights are infringed by federal officers. Thus, to avoid the predicament of extending a right where no remedy exists...a cause of action must be implied against federal officials. *Id.* See *Hearth, Inc. v. Department of Public Welfare,* 612 F.2d 981, 982 (5th Cir.1980).

The District Court for the Eastern District of Pennsylvania appears to be following the line of analysis suggested by Judge Hand. In *Stockton v. Weiner,* No. 81–5328 (E.D.Pa. Aug. 24, 1982), Judge Huyett says:

In addition to her statutory claims brought under section 1983, plaintiff also asserts causes of action against all three defendants based directly on the first, fourth, fifth and fourteenth amendments. It must be noted that plaintiff's claims under the first, fourth and fifth amendments are cognizable only through the application of the fourteenth. While the Third Circuit has not yet decided the question, the district courts in this Circuit have held that where a plaintiff has stated a claim under the federal civil rights statutes sufficient to vindicate his constitutional rights, there is no need to imply a constitutional cause of action directly under the fourteenth amendment. *See, e.g., DiGiovanni v. City of Philadelphia,* 531 F.Supp. 141, 144 (E.D.Pa.1982) (citations omitted). These claims therefore will be dismissed. *Id.* at 3.

■ In the present case, Horne's rights can be adequately vindicated under § 1983. There is no need to imply a constitutional cause of action directly under the fourteenth amendment. The claims based directly on the fourteenth amendment will be dismissed.

■ The allegations against District Justice Hardy are factually based on two ac-

tions. First, he set a time for a hearing on the complaint by Commercial Credit against Horne. Second, he signed a form judgment disposing of the matter in favor of Commercial Credit. Both of these actions are exercises of the district justice's judicial power. The threat of tort liability could seriously inhibit the effective utilization of the authority granted to him by the Commonwealth. Since Hardy's actions are judicial, he is entitled to absolute immunity from money damages. *Fox v. Castle,* 441 F.Supp. 411, 412–13 (M.D.Pa.1977). *See Pierson v. Ray,* 386 U.S. 547, 553–55, 87 S.Ct. 1213, 1217–18, 18 L.Ed.2d 288 (1967). Thus all claims against District Justice Hardy will be dismissed.

■ The plaintiff alleges that the defendants violated the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692d and 1692e. Both of these sections relate to the activities of a "debt collector." The term "debt collector" is defined in 15 U.S.C. § 1692a(6). The subsection says:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (G) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 USCS § 1692f(6) ], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

Once the primary definition is established the statute goes on to exclude certain types of persons from the definition. 15 U.S.C. 1692a(6)(A)–(G). One of the exclusions is for "(F) any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client; ...." John J. Krafsig, Esquire, the attorney for Commercial Credit, is alleged to have performed two acts related to this controversy. First, he filed the complaint in assumpsit on behalf of Commercial Credit and against Horne. Second, he or his office received payments which Horne made under the judgment. Krafsig was not present in the closed room nor was he even in the District Judge's office on February 18, 1982. Nothing is alleged in the complaint which would link Krafsig with any alleged violations of Horne's rights. The bare allegation of some connection with Farrell is not sufficient. *Hickey v. New Castle County,* 428 F.Supp. 606, 611 (D.Del.1977). The complaint indicates no facts that would take Krafsig out of the exception granted by § 1692a(6)(F). The claim under the Fair Debt Collection Practices Act will be dismissed as it relates to Krafsig.

A claim under the Fair Debt Collection Practices Act is also brought against the agent of Commercial Credit who was present in the closed room. The agent may or may not have been defendant Gardner, but apparently the person is admitted by Commercial Credit to be its agent. This agent accompanied Farrell and Horne into the room.

■ Section 1692a(6)(A) of Title 15 excludes from the definition of debt collector "(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor; ...." The agent was present at the District Justice's office prepared to participate in a proceeding before District Justice Hardy. The complaint does not allege that Horne was confused as to whom the agent represented. The agent may have been party to the alleged actions of Farrell, but that is not enough to take him out of the exclusion in § 1692a(6)(A). Since the agent is excluded from the definition of debt collector, the claim against "Gardner" under the Fair Debt Collection Practices Act will be dismissed.

The plaintiff's argument as to Farrell is that he used a name other than the creditor

to collect a debt owed to Commercial Credit, therefore he is a "debt collector" within the meaning of § 1692a(6).

The definition of debt collector contained in § 1692a(6) has three parts. The parts are:

1. any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of debts or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

2. any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

3. any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

Farrell clearly does not fit within the definitions in parts 1 and 3. Farrell's principal business purpose was not the collection of debts. The United States Court of Appeals for the Third Circuit has indicated that the "principal purpose" requirement should be considered. *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir.1980).

■ The alleged actions of Farrell appear from the complaint to be outside of his ordinary activities as a constable even if that position could qualify as a business within the meaning of the statute. It seems illogical to classify such unusual actions as the "principal purpose" of Farrell's business. Parts 1 and 3 of the definition cannot, therefore, apply to him.

Part 2 of the definition contained in § 1692a(6) makes *the creditor* who utilizes a name other than his own in order to collect a debt, a debt collector. Farrell is not a creditor. Even if his name was used to collect the debt from Horne, he would not become a debt collector under the Fair Debt Collection Practices Act.

Farrell does not fit within the definition of debt collector. The claims against him based on the Fair Debt Collection Practices Act will be dismissed.

The allegation against Commercial Credit under the Fair Debt Collection Practices Act is based on the assertion that Farrell was collecting a debt for Commercial Credit and used his name in doing so. Thus, supposedly Commercial Credit becomes a debt collector under § 1692a(6).

■ Giving the complaint an *extremely* liberal reading it is arguable that Commercial Credit can be considered a debt collector and is therefore subject to liability under the Fair Debt Collection Practices Act. Using the standard in *Conley v. Gibson, supra,* the complaint is sufficient to avoid dismissal because of a Rule 12(b)(6) motion.

■ The plaintiff has made allegations of violations of his civil rights which are protected under 42 U.S.C. § 1983. The constitutional rights which the plaintiff indicated have been violated are the guarantees of equal protection and due process under the fourteenth amendment. The alleged actions of Constable Farrell, while he was in uniform and in the locale in which a person might expect to find a constable performing his functions, were taken under the color of state law. *Monroe v. Pope,* 365 U.S. 167, 183–187, 81 S.Ct. 473, 481–84, 5 L.Ed.2d 492 (1960). *See Jennings v. Shuman,* 567 F.2d 1213, 1220 (3d Cir.1977). The complaint states a cause of action against Farrell under § 1983.

■ The issue then becomes whether Farrell's actions can be related to defendants Krafsig, "Gardner" or Commercial Credit. The United States Court of Appeals for the Third Circuit has rejected the theory of *respondeat superior* in actions under § 1983. *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir. 1976). The Third Circuit requires acquiescence or participation in the violation before liability attaches under § 1983. The complaint totally fails to allege any facts which would suggest either defendant Krafsig or defendant Commercial Credit acquiesced or participated in Farrell's actions. The mere allegation that they conspired

with Farrell is inadequate. 428 F.Supp. at 611. The § 1983 claims against Krafsig and Commercial Credit will be dismissed.

■ The defendant "Gardner", on the other hand, was present at the "settlement" meeting. Although the allegations as to what Gardner did or said are vague, they are sufficient to withstand a 12(b)(6) motion.

■ As the ninth claim in his complaint, the plaintiff alleges that the violation of state common law creates a separate and independent cause of action under § 1983. Section 1983 protects persons from deprivation of *federally* protected rights. 435 F.Supp. at 150. The claims of false imprisonment, abuse of process, or intentional infliction of emotional distress are based upon Pennsylvania law. No federally protected rights are allegedly violated. Thus, claim 9 will be dismissed.

The plaintiff alleges that the defendants' actions were a conspiracy to violate his civil rights. Such a conspiracy, the plaintiff argues, is in violation of 42 U.S.C. § 1985(3). The United States Supreme Court said in *Griffin v. Breckenridge,* 403 U.S. 88, 101–02, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338 (1971) that:

It is thus evident that all indicators—text, companion provisions, and legislative history—point unwaveringly to § 1985(3)'s coverage of private conspiracies. That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. For, though the supporters of the legislation insisted on coverage of private conspiracies, they were equally emphatic that they did not believe, in the words of Representative Cook, "that Congress has a right to punish an assault and battery when committed by two or more persons within a State." [Cong. Globe, 42d Cong., 1st Sess., App. 485 (1871).] The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra,* at 100. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. 403 U.S. at 101–02, 91 S.Ct. at 1797–98 (footnotes omitted).

Plaintiff asserts that the invidiously discriminatory animus was directed at him because he was an unrepresented litigant. The plaintiff points to no cases where such a classification has been the basis of a § 1985 action and the court can find none.

The United States Court of Appeals for the Third Circuit has identified a rationale for determining whether an animus against a class could underlie a violation of § 1985. The court said:

The principle that individuals should not be discriminated against on the basis of traits for which they bear no responsibility makes discrimination against individuals on the basis of immutable characteristics repugnant to our system. The fact that a person bears no responsibility for gender, combined with the pervasive discrimination practiced against women, and the emerging rejection of sexual stereotyping as incompatible with our ideals of equality convince us that whatever the outer boundaries of the concept, an animus directed against women includes the elements of a "class-based invidiously discriminatory" motivation. *Novotny v. Great American Federal Savings & Loan Association,* 584 F.2d 1235, 1243 (3d Cir.1978) vacated on other grounds and remanded 442 U.S. 366 [99 S.Ct. 2345, 60 L.Ed.2d 947] (1979) (footnotes omitted).

■ The Third Circuit applied the rationale outlined above in *Carchman v. Korman Corp.*, 594 F.2d 354 (3d Cir.) *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). The court said:

> *Novotny* did not define the "outer boundaries" of class-based animus but the analysis in that case is sufficient to show that tenant organizers do not constitute a class protected by the statute. Unlike racial or sexual animus, animus against tenant organizers is not based upon "immutable characteristics" for which the members of the class have no responsibility. Nor are we persuaded that tenant organizers have been the victims of the historically pervasive discrimination practiced against women. *Id.* at 356 (footnote omitted).

The same statements can be made about the plaintiff in this case. Being a *pro se* defendant is not like the immutable characteristics of sex or race. Nor have *pro se* defendants been victims of historically pervasive discrimination. The claims based upon § 1985 will be dismissed as against all defendants.

■ The plaintiff alleges that defendant Farrell violated three of his rights which are guaranteed by Pennsylvania state law. These state law claims are asserted to be within this court's jurisdiction because they are pendent to the federal claims. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218 (1966). The rule as stated by the Court in *Gibbs* is "The state and federal claims must derive from a common nucleus of operative fact." *Id.* at 725, 86 S.Ct. at 1138. The present case revolves around the nucleus of the actions taken by the defendant Farrell in relation to the "settlement" of Commercial Credit's civil suit on the debt. The federal and state claims are derived from these facts. Judicial economy would suggest that all the claims should be tried together. This court has pendent jurisdiction over the state claims.

The plaintiff alleges that Farrell's actions were false imprisonment, abuse of process and intentional infliction of emotional distress. Farrell moves to dismiss each of these claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. While the procedural aspects are controlled by the Federal Rules of Civil Procedure, the substantive cause of action must be based on Pennsylvania law. 383 U.S. at 726, 86 S.Ct. at 1139.

The plaintiff's first state law claim against Farrell is for false imprisonment. The Restatement (Second) of Torts sets out the elements of false imprisonment. Section 35 says:

> (1) An actor is subject to liability to another for false imprisonment if
>
> (a) he acts intending to confine the other or a third person within boundaries fixed by the actor, and
>
> (b) his act directly or indirectly results in such a confinement of the other, and
>
> (c) the other is conscious of the confinement or is harmed by it.
>
> (2) An act which is not done with the intention stated in Subsection (1)(a) does not make the actor liable to the other for a merely transitory or otherwise harmless confinement, although the act involves an unreasonable risk of imposing it and therefore would be negligent or reckless if the risk threatened bodily harm.

Pennsylvania courts have not articulated precisely each of the elements outlined in the Restatement (Second). *See* Restatement of Torts, Pennsylvania Annotations to § 35; Restatement (Second) of Torts, § 35, Appendix and Pocket Part (1981). The Pennsylvania Supreme Court has reached conclusions consistent with the Restatement. *See Duggan v. Baltimore & Ohio Railroad,* 159 Pa. 248, 28 A. 182 (1893); *Burk v. Howley,* 179 Pa. 539, 36 A. 327 (1897); *McAleer v. Good,* 216 Pa. 473 (1907). The United States District Court for the Eastern District of Pennsylvania referred to the Restatement (Second) of Torts, Sections 35–45A when discussing the Pennsylvania common law tort of false imprisonment. *Kedra v. Philadelphia,* 454 F.Supp. 652, 666–67 (E.D.Pa.1978).

■ The Pennsylvania Supreme Court said: "The gist of false imprisonment is unlawful detention.... " *McCarthy v. DeArmit*, 99 Pa. 63, 71 (1881). The plaintiff in this case asserts that Constable Farrell held him in the closed room by threat of force until he settled his debt to Commercial Credit. These alleged facts are sufficient to state a cause of action for false imprisonment under Pennsylvania law. The motion by Farrell under Rule 12(b)(6) will be denied.

■ The plaintiff's second state claim against Farrell is for abuse of legal process. The tort of abuse of process has been defined by the Pennsylvania Supreme Court: "The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it: .... *Publix Drug Co. v. Breyer Ice Cream*, 347 Pa. 346, 348, 32 A.2d 413 (1943). *See Mayer v. Walter*, 64 Pa. 283, 285 (1870); *Sachs v. Levy*, 216 F.Supp. 44, 46 (E.D.Pa. 1963).

■ The plaintiff bases his claim of abuse of process on Farrell's alleged threats to institute criminal proceedings against the plaintiff unless he made the payments required by the "Affidavit of Indigency." No criminal process is alleged to have been issued.

The allegations fail to state a claim for abuse of process. The definition of the tort used by the Pennsylvania Supreme Court goes to abuse of legal process "after it has been issued." 347 Pa. at 348, 32 A.2d 413. If no legal process was ever issued based on the affidavit, then there was nothing for Farrell to abuse. The defendant's motion to dismiss under Rule 12(b)(6) will be granted.

The plaintiff's third state law claim is for intentional infliction of emotional distress. As in the other state law claims, Pennsylvania state law controls. *See* 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

The Pennsylvania Supreme Court appears to have adopted the definition of intentional infliction of emotional distress which is set out in § 46 of The Restatement (Second) of Torts. *See Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118. *See also D'Ambrosio v. Pennsylvania National Mutual Casualty Ins. Co.*, 494 Pa. 501, 511, 431 A.2d 966 (1981); *Forster v. Manchester*, 410 Pa. 192, 189 A.2d 187 (1963).

The defendant Farrell argues that:

[U]nder Pennsylvania law a Plaintiff can make out a claim for intentional infliction of emotional distress only upon proving that the conduct complained of was of an extreme or outrageous type and that Plaintiff suffered physical harm. There is no allegation in Plaintiff's Complaint of any physical harm to Plaintiff by Defendant Farrell. Brief of defendant George A. Farrell in Support of his Motion to Dismiss at 12.

In support of this assertion, Farrell relies on *Mazzare v. Burroughs Corp.*, 473 F.Supp. 234, 241 (E.D.Pa.1979). The court in *Mazzare* in turn relied on *Jones v. Nissenbaum*, 244 Pa.Super. 377, 379, 368 A.2d 770 (1976). The difficulty with Farrell's analysis is that the Pennsylvania Superior Court in *Jones* mentions bodily harm only when it quotes from Restatement § 46. The main emphasis of the court in *Jones* is on the type of extreme or outrageous conduct required to support the tort. 244 Pa.Super. at 379, 368 A.2d 770. It is not clear whether bodily harm is an element of the tort under Pennsylvania law. Judge Jacobs, writing in *Jones* says: "The paucity of Pennsylvania cases in this area reveals that the scope of this tort [intentional infliction of emotional distress] has yet to be defined in the case law of our state." *Id.*

■ The unsettled nature of Pennsylvania law on intentional infliction of emotional distress leaves it unclear as to whether Horne has stated a cause of action against Farrell. Since the state law is so unclear, the motion to dismiss under Rule 12(b)(6) will be denied. It is arguable that the plaintiff may be able to state a claim upon which relief may be granted.