Frances Webb STRONG, Plaintiff,

v.

DEMOPOLIS CITY BOARD OF EDUCA-
TION, et al., Defendants.

Civ. A. No. 81–0090–H.

United States District Court,
S. D. Alabama, S. D.

June 10, 1981.

Kenneth L. Thomas, Alabama Education Association, Montgomery, Ala., for plaintiff.

Hugh A. Lloyd, Demopolis, Ala., for defendants.

### MEMORANDUM OF DECISION

HAND, District Judge.

In this case a female who serves as both a physical education teacher and as a coach seeks damages, equitable, and declaratory relief for alleged sex-based discrimination in employment from the Demopolis City Board of Education and the members of the Demopolis City Board of Education. The plaintiff claims remedies under the fourteenth amendment, 42 U.S.C. § 1983, Title VII, the Fair Labor Standards Act, and Title IX of the Education Act of 1972. The

Court has before it the motions of the defendants to dismiss the claims alleged in both the original and the amended complaints.

## I. Fourteenth Amendment

In part the "[p]laintiff avers that she would have been paid at a higher rate of pay for her coaching duties but for her sex. As such, the action of the defendants in failing and refusing to pay plaintiff on an equal basis with male coaches violates rights guaranteed to plaintiff under the Fourteenth Amendment to the United States Constitution ...." Complaint at ¶ 17. "As such, plaintiff is seeking relief under the Fourteenth Amendment ...." Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss at 3 (filed Apr. 6, 1981).

The defendants argue the eleventh amendment immunizes them from suit in federal court under the fourteenth amendment. *Contra, Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, no relief is available, the defendants conclude, under the fourteenth amendment.

■ The Court agrees that no claim upon which relief could be granted is stated under the fourteenth amendment. However, the Court bases its conclusion on different grounds than the defendants: the fourteenth amendment does not afford an implied cause of action in general and for employment discrimination in particular.

[T]he federal courts, and this Circuit in particular, have been hesitant to find causes of action arising directly from the Constitution. Our reluctance stems from many concerns, not the least of which is our awareness that the framers of the Constitution saw fit to entrust the job of legislating to Congress .... Congress has provided a means of seeking relief against state officials who violate the Constitution [: 42 U.S.C. § 1983.] ... [O]ur jurisdiction has not been further established.

*Hearth, Inc. v. Department of Public Welfare*, 612 F.2d 981, 982 (5th Cir.), *modified*, 617 F.2d 381 (5th Cir. 1980) (per curiam). Because a substantial claim that a remedy may be implied from the federal constitution is enough for jurisdiction, 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 3562 (Supp.1980), the claim which the plaintiff seeks to imply from the fourteenth amendment is dismissed for failure to state a claim[1] rather than for lack of subject-matter jurisdiction.[2]

1. Cases in the Fifth Circuit reach contradictory conclusions on the question whether a private remedy can be implied from the fourteenth amendment. *Compare Dean v. Gladney*, 621 F.2d 1331, 1335–36 (5th Cir. 1980) (the reasoning in *Bivens* should not be understood as "recognizing sweeping federal judicial power to create damages remedies to vindicate constitutional rights.") *and Hearth, Inc. v. Department of Public Welfare*, 612 F.2d 981, 982 (5th Cir. 1980), *modified*, 617 F.2d 381 (5th Cir. 1980) ("[T]he federal courts, and this Circuit in particular, have been hesitant to find causes of action arising from the Constitution.") *with Goss v. San Jacinto Junior College*, 588 F.2d 96, 97–8 n.2 (5th Cir. 1979) (*"On a number of occasions*, we have held that § 1331 confers jurisdiction over actions brought to vindicate First and Fourteenth Amendment rights.") (emphasis added) *and Reeves v. City of Jackson, Mississippi*, 532 F.2d 491, 495 (5th Cir. 1976) (eighth and fourteenth amendment claims are "of the kind cognizable by federal courts" regardless of "any enabling statute such as § 1983"), *after remand*, 608 F.2d 644 (5th Cir. 1979) and *McCullock v. Glasglow*, 620 F.2d 47

(5th Cir. 1980) (comparing claim against federal official in *Davis v. Passman* with a claim against a town). The Fifth Circuit en banc has not addressed the issue in an enlightening manner. *E.g., Rodriguez v. Ritchey*, 556 F.2d 1185, 1192 (5th Cir. 1977) (en banc) (declining to speak on the appropriateness of extending *Bivens); accord, Davis v. Passman*, 571 F.2d 793, 796 (5th Cir. 1978) (en banc) (facing the *Bivens* issue whether, and under what conditions, a cause of action should be implied from the Constitution), *rev'd*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (criticizing the analytical approach employed by en banc court while reversing). Thus, the lack of an unequivocal position in this Circuit, taken together with the absence of any analytical framework, leave litigants and district courts in a quandary over whether the fourteenth amendment affords a basis for relief under § 1331(a).

Analytically, the sounder approach would be *not* to imply a cause of action under the fourteenth amendment. Congress has provided, in the body of § 1983, a remedy to plaintiffs who are wronged by "persons" acting under "color

## II. 42 U.S.C. § 1983

The rights created by the fourteenth amendment are enforced against persons who act under color of state law through 42 U.S.C. § 1983. Any rights afforded a woman to be free from sex discrimination in violation of the equal protection clause of the fourteenth amendment can be vindicated under 42 U.S.C. § 1983. The defendants advance several arguments in support of their contention that the plaintiff has failed to state a claim upon which relief can be granted under 42 U.S.C. § 1983. The argument may be summarized as follows: (1) relief under section 1983 is available only to blacks; (2) relief is available only where a plaintiff proves that the defendants failed to act in good faith; (3) a school board is not a person within the meaning of section 1983; and (4) the plaintiff failed to exhaust administrative remedies.

 None of these arguments is persuasive. First, section 1983 affords a remedy to any plaintiff, regardless of the plaintiff's skin color, for action taken by a defendant under color of state law which deprives the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. No authority need be cited to support this fundamental statement of law. Second, although school board members are entitled to plead qualified immunity as an affirmative defense to liability in their individual capacity the burden of pleading and proof is upon the defendant. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The availability of the defense of qualified im-

munity does not bar a 1983 action against a defendant. It only provides an affirmative defense. *Familias Unidas v. Briscoe*, 619 F.2d 391 (5th Cir. 1980) (discussing qualified immunity). Third, the Supreme Court had laid to rest any doubts that school boards are not persons within the meaning of 42 U.S.C. § 1983. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Fourth, the defendants have made no showing that adequate administrative remedies exist which would require the plaintiff to exhaust those remedies before filing this 1983 action. While exhaustion of adequate state administrative remedies can be a prerequisite to actions under section 1983, *Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981) (en banc), the defendants have not demonstrated that exhaustion is required in this case. For these reasons the motion of the defendants to dismiss the claim under 42 U.S.C. § 1983 for failure to state a claim upon which relief could be granted is denied.

## III. Title VII

 Section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e), provides in pertinent part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . .

The defendants challenge the Court's jurisdiction of plaintiff's Title VII claim on the ground plaintiff's EEOC complaint was not timely filed.

In determining the timeliness of plaintiff's administrative complaint, the United

---

of state law" where the plaintiff has a right, privilege, or immunity secured by the Constitution or federal laws which is infringed. Section 1983 is coextensive in scope with the fourteenth amendment. By contrast, no specific legislation provides aggrieved plaintiffs with a remedy when protections of the Bill of Rights are infringed by federal officers. Thus, to avoid the predicament of extending a right where no remedy exists under, say, the fourth amendment, *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); the fifth amendment, *Davis v. Passman*, 442

U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (fifth amendment claim against deputy clerk of federal court), and the eighth amendment, *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), a cause of action must be implied against federal officials.

**2.** Wright and Miller note that the appropriate grounds of dismissal "seems to have been overlooked" by the en banc decision of the Fifth Circuit in *Rodriguez v. Ritchey*, 556 F.2d 1183 (5th Cir. 1977) (en banc). 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 3562 at 340 n.42.2 (Supp.1980).

States Supreme Court's decision rendered in *Delaware State College v. Ricks,* —— U.S. ——, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980), would require a precise identification of the "unlawful employment practice" of which plaintiff complains. The complaint, as amended, describes the unlawful employment practice complained of in the following manner:

13. Prior to the 1977–78 school year, male coaches who coached boys' activities (sports) were paid coaching supplements. Prior to the 1977–78 school year plaintiff was not paid a supplement for her coaching duties. Plaintiff received her first coaching supplement during the 1977–78 school year.

13(a). Plaintiff avers that throughout her employment as a coach in the defendant school system she has been consistently paid less than male coaches who performed the same work.

14. Coaching girls' activities (sports) requires at least the same skills, efforts and responsibilities as coaching boys' activities (sports) and is performed under similar working conditions.

15. On or about January 15, 1980, the former superintendent of education of the Demopolis City Board of Education advised plaintiff she would receive $300.00 per activity (sport), not to exceed two (2) activities (sports) at $600.00 as supplemental pay for her coaching duties.

15(a). On or about February 11, 1980, plaintiff was granted the opportunity to appear before the defendant Board and inquire into why she was being paid as described in paragraph 15 of the complaint.

16. It was during plaintiff's appearance before the defendant Board on or about February 11, 1980, that plaintiff learned that male coaches in the defendant school system were being paid $630.00 or higher per activity (sport) and received raises as necessary or when desired as supplement pay for their coaching duties.

17. Plaintiff avers that she would have been paid at a higher rate of pay for her coaching duties but for her sex. As such, the action of the defendants in failing and refusing to pay plaintiff on an equal basis with male coaches violates rights guaranteed to plaintiff under Title 42 U.S.C. § 2000e, *et seq.*

In sum, plaintiff alleges she is a coach who is assigned various girls' activities (sports) and is paid a coaching supplement for her coaching responsibilities as are the male coaches who coach boys' activities (sports). However, plaintiff is not paid for her coaching duties on an equal basis with the male coaches. Plaintiff attributes this to her sex. Plaintiff further alleges that throughout her employment as a coach she has been consistently paid less than male coaches who perform the same duties.

Plaintiff avers she was advised of the rate of pay she would receive for her coaching duties on January 15, 1980 and on February 11, 1980, during an appearance before the defendant Board to question the same, learned that the male coaches were being paid at a higher rate of pay.

Under *Ricks,* the next inquiry is when did the alleged discrimination occur. 66 L.Ed.2d at 439. This circuit views sex-based discrimination in pay to be a continuing violation. *Clark v. Olinkraft, Inc.,* 556 F.2d 1219 (1977). This is so because each time the employer pays its employees on the basis of a discriminatory scale a new act of discrimination is committed. *Ricks* mandates this result with its focus upon the unlawful employment practice.

■ Additionally the doctrine of equitable tolling operates to make the EEO complaint timely. The alleged disparity in pay between male and female coaches is the type of on-going violation which is peculiarly within the knowledge of the employer. Employees are ordinarily not privy to knowledge about the salaries received by co-employees. The complaint affirmatively alleges a lack of knowledge concerning the discrimination in pay, and the Court must accept the allegation as true when ruling upon a motion to dismiss. Thus even if the discriminatory denial of equal pay was viewed as a discrete unlawful employment practice application of the doctrine of equi-

table tolling is warranted since facts supportive of a Title VII charge were not apparent to the plaintiff prior to February 11, 1981. *Nilsen v. City of Moss Point*, 621 F.2d 117 (5th Cir. 1980); *Dumas v. Town of Mount Vernon*, 612 F.2d 974 (5th Cir. 1980); *Hamilton v. General Motors Corp.*, 606 F.2d 576 (5th Cir. 1979); *Chappell v. EMCO Machine Works Co.*, 601 F.2d 1295 (5th Cir. 1979); *see Oaxaca v. Roscoe*, 641 F.2d 386 (5th Cir. 1981); *Coke v. General Adjustment Bureau, Inc.*, 640 F.2d 584 (5th Cir. 1981) (en banc).

Accordingly, the motions of the defendants to dismiss the Title VII claim alleged in the amended complaint are denied.

## IV. Fair Labor Standards Act

■ As the Court indicated in open court at the hearing in Selma, Alabama on April 22, 1981, the motions to dismiss the claim under the Fair Labor Standards Act [hereinafter cited as *FLSA*] are denied. The two-year statute of limitations does not burden the plaintiff's claim by limiting recovery of back wages under the FLSA to those wages lost during the two years prior to suit since, under the caselaw in this circuit, "[s]ex based, discriminatory wage payments constitute a continuing violation of the Equal Pay Act." *Hodgson v. Behrens Drug Company*, 475 F.2d 1041 (5th Cir. 1973).

## V. Title IX of the Education Act of 1972

The final claim under which the plaintiff seeks recovery is under Title IX of the Education Amendments of 1972. 20 U.S.C. §§ 1681–1686. Section 901(a) of Title IX, 20 U.S.C. § 1681(a), provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

Noticeably absent from section 901(a) is any express provision affording anybody the right to sue for redress in federal or state court. Ms. Strong, however, contends she has an implied remedy under the Act.

■ Whether a court should imply a private remedy under a federal statute which does not expressly provide a private remedy is basically a question of statutory interpretation and the intent of the Congress. *California v. Sierra Club*, —— U.S. ——, ——, 101 S.Ct. 1775, 1780, 68 L.Ed.2d 101 (1981) ("Cases subsequent to *Cort* [*v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975)] have explained that the ultimate issue is whether Congress intended to create a private right of action, see *Universities Research Assn. v. Coutu*, —— U.S. ——, ——, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Transamerica Mortgage Advisors v. Lewis*, [444 U.S. 11, 23–24, 100 S.Ct. 242, 248–49, 62 L.Ed.2d 146 (1979)]; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 575–576, 99 S.Ct. 2479, 2485, 2488–89, 61 L.Ed.2d 82 (1979); but the four factors specified in *Cort* remain the "criteria through which this intent could be discerned." *Davis v. Passman*, 442 U.S. 228, 241, 99 S.Ct. 2264, 2275, 60 L.Ed.2d 846 (1979); *Transamerica Mortgage Advisors v. Lewis, supra*, 444 U.S. at 27, 100 S.Ct. at 251 (White, J. dissenting)."); *Pennhurst State School v. Halderman*, —— U.S. ——, ——, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981) ("The initial question before us, then, is one of statutory construction: Did Congress intend in [the body of the statute in question] to create enforceable rights and obligations?"); *Northwest Airlines v. Transport Workers*, —— U.S. ——, ——, 101 S.Ct. 1571, 1578, 67 L.Ed.2d 750 (1981) ("The ultimate question in cases such as th[ese] is whether Congress intended to create the private remedy . . . that the plaintiff seeks to invoke."); *Noe v. Metropolitan Atlanta Rapid Transit Authority*, 644 F.2d 434, 437 (5th Cir. 1971) (per Fay, J.; recognizing a narrowing of *Cort v. Ash* by Supreme Court).

■ Three cases led the Court to conclude that Congress intended to imply a private remedy in favor of teachers who are discriminated against because of their sex. First, in *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), the Supreme Court spoke in broad

terms when it concluded that "Title IX presents the atypical situation in which *all* of the circumstances that the Court has previously identified as supportive of an implied remedy are present." *Id.* at 717, 99 S.Ct. at 1968 (emphasis in the original). The remedy which the Supreme Court found implicit in Title IX ran to *"persons* discriminated against on the basis of sex . . . ." *Id.* at 694, 99 S.Ct. at 1956 (emphasis added). Repeatedly throughout its opinion the *Cannon* Court couched its analysis in terms of *persons* and did not restrict itself to holding that the implied remedy ran only to *applicants* or *students.*

Second, in dicta Judge Rubin has concluded that the Secretary of Education[3] can issue and enforce regulations which prohibit schools that receive federal financial assistance from engaging in sexual discrimination with respect to faculty who are paid with federal funds. *Dougherty County School System v. Harris,* 622 F.2d 735, 737–38 (5th Cir. 1980), *petition for cert. filed sub nom.,* 49 U.S.L.W. 3495 (U.S. Dec. 22, 1980) (No. 80–1023). Title IX, Judge Rubin notes, "begins with the words 'no person', not with a more limited phrase such as 'no student'. It protects all who may be 'excluded from participation in, be denied the benefits of, or be *subjected to discrimination under'* education programs or activities receiving federal assistance." 622 F.2d at 737–38 (emphasis in original). So, the only light from the Fifth Circuit, dicta though it is, favors the authority of the Secretary of Education to issue and enforce regulations which prohibit sex-based discrimination against faculty under Title IX.

Third, the Second Circuit has exhaustively reviewed the legislative history of Title IX and concluded that the Act was intended by Congress to cover sex-based employment discrimination against faculty members. *North Haven Board of Education v. Hufstedler,* 629 F.2d 773 (2d Cir. 1980), *cert.*

granted, —— U.S. ——, 101 S.Ct. 1345, 67 L.Ed.2d 332 (1981). *Contra, Seattle University v. Department of HEW,* 621 F.2d 992 (9th Cir. 1980), *cert. granted,* —— U.S. ——, 101 S.Ct. 563, 66 L.Ed.2d 467 (1980). It may be that the Supreme Court will reverse the Second Circuit after considering the legislative history of Title IX. Possibly a decision from the Supreme Court will issue before judgment is rendered in the case *sub judice.* Until then this Court feels bound by the exhaustive and scholarly analysis which the Second Circuit developed in *North Haven Board of Education.*

In sum, the Court holds that the language of Title IX and the legislative intent of Congress mandate that this Court conclude Title IX contains an implied cause of action in favor of private litigants who have been subjected to sex-based discrimination under education programs or activities which receive federal assistance while teaching in the educational program. The Court is reluctant to reach this conclusion since, it believes, legislation is something which Congress should do; if Congress fails to act explicitly this Court would prefer to decline the invitation of litigants such as Ms. Strong to imply private remedies. "[I]t is an elemental cannon of statutory constitution that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 19, 100 S.Ct. 242, 247, 62 L.Ed.2d 146 (1979). However, duty-bound as it is to follow clear precedent the Court sees no alternative to its holding today.

The motion of the defendants to dismiss the claim under Title IX is denied.[4]

## VI. Order

The motion to dismiss the claim which the plaintiff seeks to imply under the fourteenth amendment is granted. The motion

---

3. All functions of HEW relating to Title IX have been transferred to the Department of Education. 20 U.S.C. § 1681 (Supp.1980).

4. The complaint adequately alleges that Strong is "be[ing] subjected to discrimination under

an[ ] education program receiving Federal financial assistance . . . ." 20 U.S.C. § 1681(a). The next challenge to the merits of the claim must be by a motion for summary judgment which addresses the underlying factual issues.

to dismiss the claims under 42 U.S.C. § 1983, Title VII, FLSA, and Title IX is denied.