Jeanne VAN HEEST, Plaintiff,

v.

McNEILAB, INC., trading as First State Chemical Co., Inc., Defendant.

Civ. A. No. 83–336 MMS.

United States District Court, D. Delaware.

Dec. 18, 1985.

Sheldon N. Sandler, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiff.

Robert J. Katzenstein, Lassen, Smith, Katzenstein & Furlow, Wilmington, Del., of counsel: Joseph M. David, Jr., James E. Farrell, Jr., and Francis X. O'Brien, Jr., Curran, Mylotte, David & Fitzpatrick, Philadelphia, Pa., for defendant.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Plaintiff Jeanne M. Van Heest brought this sex-discrimination action against de-

fendant McNeilab, Inc., trading as First State Chemical Co., Inc. ("McNeilab"), to recover back wages and other damages. Plaintiff's claims are based on the Equal Pay Act of 1963, 29 U.S.C. § 206(d) & § 206 note, and Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. § 2000e *et seq.* In essence, plaintiff claims that during the period from August 22, 1980, to October 31, 1982, when she worked for McNeilab, defendant discriminated against her on the basis of sex by paying her lower wages than comparable male employees received. The primary evidence advanced to support this contention is that the two males allegedly hired to replace her were paid a combined total of over three times her salary.

Presently before the Court is defendant's motion for summary judgment. For the reasons that follow, defendant's motion will be granted in part and denied in part.

## I. Facts

The relevant facts are stated in the light most favorable to plaintiff, the party opposing the summary judgment motion. In 1977, plaintiff began working at First State Chemical Company ("FSCC"), a small, privately owned chemical-manufacturing company. Plaintiff and her husband were the only employees of FSCC. Plaintiff's duties included purchasing, payroll, bookkeeping, and secretarial tasks. Her purchasing duties included buying office supplies, capital equipment for production, and raw materials. Plaintiff's Deposition ("Dep."), Docket Item ("Dkt.") 17, at 10–11. Plaintiff received no salary during her first year at FSCC, but later received a salary of $18,000 per year. *Id.* at 12.

In August, 1980, FSCC was acquired by Johnson & Johnson and merged into McNeilab, a Johnson & Johnson subsidiary. At that time, FSCC had twelve employees. On August 11, 1980, plaintiff began working for McNeilab pursuant to a written three-year employment agreement, at a starting salary of $18,000 per year. The agreement provided that plaintiff "shall be entitled to ... periodic salary review ... in accordance with personnel practices established by the Company for employees with comparable experience, responsibilities and salary...." App. To Defendant's Brief In Support Of Its Motion For Summary Judgment, Dkt. 63A, at 15–16. Plaintiff continued to perform the same duties she had prior to the acquisition, although the effect of the acquisition was to expand those duties. Plaintiff's Dep., Dkt. 17, at 31–33.

Plaintiff was not given a formal job classification at that time. When plaintiff was later classified, in the latter half of 1981, her classification was based on her salary, instead of the usual Johnson & Johnson practice of classifying employees according to their duties. *See* Plaintiff's Dep., Dkt. 72, at 13–14; Dkt. 17, at 30–31; Dkt. 58, at 3–4; Beebe Dep., Dkt. 71, at 14. As a result, plaintiff was classified as an Office Manager at Level 9, a level appropriate for entry-level personnel in accounting or computer science, or an entry-level research assistant or computer programmer. Beebe Dep., Dkt. 71, at 28–29.

From the beginning of her employment at McNeilab plaintiff performed a variety of duties: payroll, accounting, bookkeeping, and general secretarial duties. Dkt. 42, at 1; Hauber Dep., Dkt. 33, at 11–12. In addition, plaintiff performed many of the functions of a purchasing agent, including purchasing capital equipment, raw materials, and office supplies. *See* Dkt. 42, at 2–4. In 1981, the company removed plaintiff from her accounting and bookkeeping functions because as part of those functions she reported directly to her husband, the plant manager. Stratmeyer Dep., Dkt. 16, at 12–13. The company replaced her with Al Cox, a transferred accountant from McNeilab, who was classified at a Level 13 and received a much larger salary than plaintiff had. Plaintiff's Dep., Dkt. 72, at 16–18.

In October, 1981, plaintiff was asked if she would assume the position of a Controlled Substance Officer ("CSO"), a new position that involved monitoring controlled substances. Hauber Dep., Dkt. 33, at 18–19. Company personnel prepared a job de-

scription of the position and agreed that the position should be classified at a Level 13. *Id.* at 15–16. Louise Beebe, a compensation specialist at McNeil Pharmaceuticals who was consulted on this matter, recommended that plaintiff immediately start receiving the minimum annual salary for a Level 13, $24,780. Beebe Dep., Dkt. 71, at 31; Hauber Dep., Dkt. 33, at 21. The Director of Operations at McNeil Pharmaceuticals rejected this recommendation and set plaintiff's salary at $21,500, in purported reliance on a Johnson & Johnson policy prohibiting salary increases greater than twenty percent over the former salary. Hauber Dep., Dkt. 33, at 17–18; Stratmeyer Dep., Dkt. 16, at 33–34. That policy, however, was not binding on McNeilab management. Beebe Dep., Dkt. 71, at 26.

Plaintiff's salary remained the same until she was terminated in October, 1982, despite 1) a company policy to increase to the minimum salary level for that position any salaries below that minimum as soon as possible, and 2) an increase of the Level 13 minimum to $27,258 on January 1, 1982. *See* Hauber Dep., Dkt. 33, at 23, and Ex. 1 thereto; Beebe Dep., Dkt. 71, Plaintiff's Ex. 2, at 4–5. In addition, plaintiff did not receive the same merit bonuses or stock options that similarly situated males in the company received. Plaintiff's Dep., Dkt. 72, at 42–47.

Plaintiff worked as a CSO until her termination on October 31, 1982, and continued to perform the purchasing duties she had as an Office Manager. Hauber Dep., Dkt. 33, at 19. Plaintiff developed the CSO position during her tenure at McNeilab. Plaintiff's Dep., Dkt. 17, at 50. In July, 1982, plaintiff was told by her husband, the plant manager, that she would have to leave the company because of its anti-nepotism policy. *Id.* at 94. Plaintiff agreed to leave as soon as her replacements were hired. After discussion, the company decided to hire two persons to replace plaintiff: one Purchasing Manager and one CSO. Hauber Dep., Dkt. 33, at 58–60. A top company manager stated at the time that a male should be hired as CSO because the CSO would have to deal with foreign countries whose businessmen would communicate better with males. *Id.* at 56–57.

The persons who took over plaintiff's functions were hired in October, 1982, and classified at Level 13. The new Purchasing Manager, Blaine Tilghman, started at a salary of $32,700, which equaled his previous salary. Tilghman Dep., Dkt. 34, at 4; App., Dkt. 63A, at 24. The new CSO, David Connor, started at a salary of $37,500, which approximately equaled his previous salary. *Id.* at 54. Plaintiff worked with Connor and Tilghman for about two weeks before she left the company, and she helped train them. Plaintiff's Dep., Dkt. 17, at 52, 57–58; Connor Dep., Dkt. 35, at 6. Plaintiff left the company on October 31, 1982.

After leaving, plaintiff was paid in two lump sums, at an annual rate of $21,500, for the remainder of her three-year contract term, which expired in September, 1983. Plaintiff's Dep., Dkt. 17, at 24. Although plaintiff discussed the possibility of executing a release when she was leaving the company, she never agreed to a release and did not execute the release she received from the company in January, 1983, after she had received the balance due her under her three-year contract. *Id.* at 96–99; Hauber Dep., Dkt. 33, at 45.

On May 20, 1983, plaintiff filed a written charge against FSCC with the Anti-Discrimination Section of the Delaware Department of Labor. Plaintiff brought this action against FSCC on June 1, 1983. Amended Complaint, Dkt. 25, Ex. A. Thereafter the Equal Employment Opportunity Commission sent a right-to-sue letter to plaintiff on January 13, 1984.

## II. Defendant's Motion For Summary Judgment

After the completion of discovery, defendant filed a motion for summary judgment, alleging it was entitled to summary judgment as a matter of law on a variety of legal theories. Specifically, defendant contends: 1) plaintiff is estopped from pursuing her sex-discrimination action because

she entered into an employment agreement with defendant which defendant did not breach; 2) plaintiff released defendant from liability for any claim she had against defendant; 3) plaintiff's Equal Pay Act and Title VII claims are barred by the applicable statutes of limitations; 4) defendant is entitled to summary judgment on the Equal Pay Act claim because plaintiff did not perform work substantially equivalent to her male successors, and because her wages were lower for reasons other than sex; and 5) defendant is entitled to summary judgment on the Title VII claim because there is no evidence that defendant discriminated against plaintiff on the basis of her sex. These contentions will be considered seriatim.

### A. Estoppel

 Defendant's first contention is that plaintiff is estopped from asserting her claims because she entered into an employment agreement with defendant, and defendant did not breach that agreement. Defendant cites no cases in support of its argument, nor could it. Plaintiff is not alleging breach of contract; she contends that defendant discriminated against her on the basis of her sex, in violation of her federal statutory rights. A party does not waive her right to be free from sex discrimination merely by entering into an employment contract. *See Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). If that were true, virtually every plaintiff claiming sex discrimination in employment would be estopped, because every victim of sex discrimination in employment is under some sort of contract.

### B. Release

 Defendant contends plaintiff is barred from pursuing this action because she allegedly entered into a release of all claims against defendant around the time she stopped working for defendant. Given that defendant has moved for summary judgment, the Court must view the facts in the light most favorable to plaintiff, the party opposing the motion. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). Using this standard, it is clear that plaintiff's action is not barred because she never entered into a release—she did not sign or agree to one before she left McNeilab, and she never signed the release sent to her. Plaintiff's Dep., Dkt. 17, at 96–99.

Defendant argues a release can be implied from the acts of the parties and the circumstances of the case. Defendant alleges that plaintiff's acceptance of payments for the balance of her employment contract binds her to the terms of the release defendant sent her after she had received her last contractual payment. Obviously, plaintiff's acceptance of the money cannot constitute ratification of the written release, because she had never seen the written release at the time she accepted the money. Moreover, the circumstances do not demonstrate that the money she received was consideration for the release, given that defendant apparently was contractually bound to pay her for the remainder of the three-year employment agreement. Finally, a release of plaintiff's sex-discrimination claim cannot be construed from the circumstances, because the only discussion of a release was in vague and general terms. In light of the close scrutiny given to settlements and releases of discrimination claims, *see Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 40 n. 15, 94 S.Ct. 1011, 1015 n. 15, 39 L.Ed.2d 147 (1974), it would be inappropriate to construe a vague discussion of a release into a bar of plaintiff's action. Accordingly, defendant's motion for summary judgment on the basis of a release will be denied.

### C. Equal Pay Act—Statute of Limitations

Defendant's third argument is that plaintiff's claim under the Equal Pay Act is barred by the applicable statute of limitations. Defendant contends plaintiff's cause of action, as alleged in her complaint, accrued on August 22, 1980, the first day

defendant allegedly provided plaintiff with unequal pay. Because plaintiff filed her suit on June 1, 1983, more than two years after her cause of action accrued, plaintiff's claim is barred.

Since the Equal Pay Act is an amendment to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, most Equal Pay Act suits are governed by the two-year statute of limitations applicable to FLSA actions. *See* 29 U.S.C. § 255(a). However, a three-year statute of limitations applies if the cause of action arises out of a "willful" violation of the FLSA. *Id.* Plaintiff contends that defendant's violation was willful, and the longer limitations period applies.

The courts have widely debated the definition of "willful" for statute of limitations purposes, and the divergence of views has been noted but not resolved by the Supreme Court. No consensus on the definition has emerged. *See Trans World Airlines, Inc. v. Thurston,* — U.S. —, 105 S.Ct. 613, 624–26, 83 L.Ed.2d 523 (1985); *Kneisley v. Hercules, Inc.,* 577 F.Supp. 726, 736–38 (D.Del.1983). I decline to add another voice to that debate, because I find that plaintiff's suit is timely on another ground.

■ Plaintiff contends defendant's conduct of discriminating against her in compensation was a continuing violation that existed from August 22, 1980, until plaintiff left McNeilab on October 31, 1982. Under the continuing-violation doctrine, if defendant engages in a continuing course of prohibited conduct and plaintiff's action is timely as to any act of that course of conduct, plaintiff will be allowed to litigate statutory violations within the limitations period and all preceding violations that are part of that course of conduct. *See Jenkins v. Home Ins. Co.,* 635 F.2d 310, 311–12 (4th Cir.1980) (per curiam); *Mucci v. Moonachie Bd. of Education,* 37 Fair Empl.Prac.Cas. (BNA) 65, 65–66 (D.N.J. 1985); *cf. Bronze Shields, Inc. v. New Jersey Dep't of Civil Serv.,* 667 F.2d 1074, 1080–82 & nn. 16 & 17 (3d Cir.1981) (recognizing continuing-violation doctrine in Title

VII cases), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982). Plaintiff must identify a statutory violation that occurred during the limitation period, however; her action is not timely if the only acts occurring within the limitations period are the "inevitable, but neutral, consequences of the alleged discriminatory practice." *Id.* at 1083.

■ Applying the continuing-violation doctrine to this case, plaintiff's action is timely under the two-year limitations period if she can identify any violation of the Equal Pay Act which occurred on or after June 1, 1981. Plaintiff has alleged and produced evidence of several violations during this period—defendant's decision to pay her less than the Level 13 minimum salary, defendant's failure to give her bonuses and other perquisites of the position, and defendant's failure to raise her salary as CSO promptly in order to reach the Level 13 minimum. Since alleged Equal Pay Act violations occurred during the limitations period, plaintiff's action is timely as to those violations and any preceding violations that are part of the continuing violation. *See Mucci v. Moonachie Bd. of Ed., supra; Strong v. Dempolis City Bd. of Education,* 515 F.Supp. 730, 735 (S.D.Ala. 1981); *Lamphere v. Brown Univ.,* 685 F.2d 743, 747 (1st Cir.1982); *cf. Croker v. Boeing Co. (Vertol Div.),* 662 F.2d 975, 990 (3d Cir.1981) (Title VII); *Brown v. Brown,* 528 F.Supp. 686 (D.N.J.1981) (same).

Defendant contends whatever unequal pay plaintiff received is simply the effect of the alleged misclassification in August, 1980. However, the allegations set forth above, if true, were independent violations of the Equal Pay Act and not just the inevitable effects of plaintiff's initial classification. In sum, plaintiff's action is timely under the Equal Pay Act's two-year statute of limitations.

## D. Title VII—Statute of Limitations

■ Defendant also contends that plaintiff's Title VII cause of action is barred by the applicable statute of limitations. As

this Court held in *Ferguson v. E.I. duPont de Nemours & Co.*, 560 F.Supp. 1172 (D.Del.1983), a Title VII plaintiff "must have filed a charge of discrimination with the state agency within 240 days of a discriminatory act in order to have filed timely." *Id.* at 1190. Since plaintiff filed her charge with the Delaware Department of Labor on May 20, 1983, defendant contends her Title VII claim is untimely as to any act or practice which occurred before September 22, 1982. Because alleged violations occurred before September 22, 1982, defendant claims that plaintiff's action is time-barred or, in the alternative, that her action is timely only as to acts occurring between September 22, 1982, and October 31, 1982, plaintiff's last day of employment.

In response, plaintiff contends defendant's discriminatory compensation practices were a continuing violation of Title VII. Under plaintiff's theory, defendant's payment of discriminatory compensation between September 22 and October 31 was a violation within the limitations period and enables plaintiff to litigate preceding conduct that was a part of this continuing violation. The continuing-violation doctrine has been recognized repeatedly in Title VII cases. *See, e.g., Bronze Shields,* 667 F.2d at 1080–82 & nn. 16 & 17. An allegation of discrimination in compensation has been recognized as one of the most obvious examples of a continuing violation. *See Lamphere v. Brown Univ.,* 685 F.2d 743, 747 (1st Cir.1982); *Jenkins v. Home Ins. Co.,* 635 F.2d 310, 312 (4th Cir.1980) (per curiam); *Satz v. ITT Fin. Corp.,* 619 F.2d 738, 743–44 & n. 10 (8th Cir.1980); *Mucci v. Moonachie Bd. of Ed., supra.* It follows that plaintiff's action is timely because within 240 days of defendant's allegedly discriminatory act of paying her low wages on account of her sex, plaintiff filed with the Delaware Department of Labor a charge of discrimination.

Defendant's contention that plaintiff is time barred because she felt she was a victim of discrimination in August, 1980, is unimportant. The continuing-violation doctrine recognizes that past discriminatory acts have occurred outside the limitations period, and plaintiff's awareness of those acts is irrelevant. The crucial requirement is that plaintiff file charges within 240 days of the last—not the first—discriminatory act in a course of conduct. Plaintiff will be allowed to litigate all claims that are part of that continuing violation, because she filed within 240 days of the end of that violation.

### E. Merits of Plaintiff's Equal Pay Act Claims

Defendant next contends it is entitled to summary judgment on the merits of plaintiff's Equal Pay Act claim. The Act provides, in pertinent part:

> No employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex ... for equal work or jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to ... a differential based on any other factor other than sex....

29 U.S.C. § 206(d). To prevail on an Equal Pay Act claim, plaintiff must show she performed a job equal to a job performed by one or more males. *See Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164 (3d Cir.1977). The controlling question is whether the content of the two jobs at issue is substantially equal. *See id.* at 1171. A "threshold requirement" in this analysis is "that the *jobs* to be equated be substantially the same." *Id.* at 1173. In essence, defendant contends plaintiff did not have a job equal to that of any male employees.

According to plaintiff, her job was substantially equal to that performed by the two males allegedly hired to replace her—Blaine Tilghman, the new Purchasing Manager, and David Connor, the new CSO. The undisputed facts demonstrate that plaintiff did not have a job substantially equivalent to Tilghman's job as Purchasing

Manager. The clearest evidence of this is that Tilghman is a full-time employee, whereas plaintiff performed purchasing duties in addition to her other responsibilities. Moreover, Tilghman was responsible for implementing proper purchasing procedures for a company in its infancy. Tilghman Dep., Dkt. 34, at 6–9. While plaintiff may have performed some similar tasks, such as placing orders and leasing equipment, such rudimentary comparisons of tasks are unpersuasive. *See Angelo v. Bacharach Instrument Co.*, 555 F.2d at 1171–72. The level of responsibility that Tilghman had and the scope of his job are quite different from the job performed by plaintiff. Thus, the two jobs are very different in content, and plaintiff cannot prevail on her attempt to equate her job with Tilghman's.

The better comparison is between plaintiff's job and that of David Connor, the new CSO. Plaintiff helped to create the CSO position and to establish procedures that were later followed by Connor. CSO was her primary responsibility from October, 1981, to October, 1982, although she continued to perform purchasing functions. Plaintiff, and later Conner, were both responsible for insuring the plant's compliance with controlled-substances regulations and for conducting business with foreign suppliers. However, Connor was responsible for developing procedures while the company expanded production, and he is accountable for a much greater volume of controlled substances. *See* Connor Dep., Dkt. 35, at 11. While it may be true, as plaintiff alleges, that her job required greater skill and effort because she had to prepare the plant for initial production and establish procedures, that does not prove job equality but only that their jobs were different. Connor's job requires much more time and has a greater level of responsibility. In sum, plaintiff has not identified a male employee who performs the same job that she performed, and her Equal Pay Act claim cannot survive without such a comparison. Accordingly, summary judgment will be granted to defendant on Count I of plaintiff's complaint.

### F. Merits of Plaintiff's Title VII Claim

Defendant's final contention is that plaintiff's Title VII claim must be dismissed because there is no evidence that defendant discriminated against plaintiff on the basis of her sex. Plaintiff's Title VII claim is based on two theories: first, that she received unequal pay for equal work; second, that she was treated differently from similarly situated males in regard to compensation, bonuses, and other terms and conditions of employment. Since the first theory is identical to plaintiff's Equal Pay Act theory, it can be dismissed on the same grounds. However, plaintiff's second theory of disparate treatment merits full consideration.

The heart of plaintiff's Title VII claim is that she was discriminated against because of her sex, i.e., that she was treated differently than similarly situated males, and that this treatment was the result of defendant's intentional discrimination. *See Ferguson v. E.I. duPont de Nemours*, 560 F.Supp. 1172, 1192 (D.Del.1983). The record and the inferences that can be drawn therefrom demonstrate that plaintiff was treated differently from the males at McNeilab. Unlike the males, she was not initially classified according to her duties, and because of that classification, she did not receive full compensation for her duties. When plaintiff became CSO, she was paid less than the minimum salary for her level, and defendant failed to give her a prompt raise in order to bring her to the Level 13 minimum. Both of these decisions were contrary to defendant's policies, which were followed for males, and they were also contrary to the recommendations of defendant's personnel. Moreover, plaintiff never received a merit bonus, although similarly situated males received merit bonuses. Finally, the replacement of plaintiff by two males—Tilghman and Connor—who were paid much more than plaintiff also supports an inference of discrimination, even though her job was not sufficiently similar to either of their jobs to support an Equal Pay Act claim. *Cf. International*

*Union of Elec., Radio, & Mach. Workers v. Westinghouse Elec. Corp.*, 631 F.2d 1094 (3d Cir.1980) (Title VII prohibits intentional discrimination in compensation which is outside Equal Pay Act), *cert. denied,* 452 U.S. 967, 101 S.Ct. 3121, 69 L.Ed.2d 980 (1981).

All of these facts are sufficient to present a factual issue as to whether defendant discriminated against plaintiff because of her sex. If the facts presented are true and are not rebutted or explained by defendant, the factfinder could find that defendant violated Title VII and discriminated against plaintiff. Accordingly, defendant's motion for summary judgment on this ground will be denied.

## III. Conclusion

It has been held that plaintiff's claims are not barred by estoppel, release, or the applicable statute of limitations, and that a factual issue exists which precludes summary judgment on plaintiff's Title VII claim. It has also been held that plaintiff cannot prevail on her Equal Pay Act claim because she did not have a job equal to a job held by a male. An order will be entered granting defendant's motion for summary judgment on Count I and denying defendant's motion on the other grounds alleged.